GLOBAL NAPs, INC. *vs.* MARTHA AWISZUS & others.[1]

Suffolk. April 6, 2010. - August 9, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Attorney at Law,* Malpractice, Negligence. *Negligence,* Attorney at law. *Contract,* Attorney, Performance and breach. *Anti-Discrimination Law,* Maternity leave.

In a civil action in which the plaintiff corporation sought to recover damages from its former attorneys and their law firms (defendants) arising from their representation of the plaintiff in litigation involving a claim of violation of the Massachusetts Maternity Leave Act, the judge erred in denying the plaintiff's motion for partial summary judgment on its claims of negligence and breach of contract, and in granting summary judgment in favor of the defendants, where, because the jury verdict in the underlying litigation, which was against the plaintiff, would have been overturned on appeal had the defendants filed an appeal in a timely manner, the defendants, as a matter of law, committed a breach of their duty of care toward the plaintiff by failing to file the appeal in a timely manner and not demonstrating excusable neglect for the untimely filing, thereby obligating the plaintiff to pay substantial damages. [493-503] BOTSFORD, J., concurring in part and dissenting in part, with whom GANTS, J., joined, and with whom MARSHALL, C.J., joined in part.

CIVIL ACTION commenced in the Superior Court Department on March 26, 2008.

The case was heard by *Raymond J. Brassard,* J., on motions for summary judgment, and entry of separate and final judgment was ordered by him.

The Supreme Judicial Court granted an application for direct appellate review.

*John J. Barter (Evan M. Fray-Witzer* with him) for the plaintiff.

*Andrew J. Goodman,* of New York (*James Freeman,* of New York, *& David J. Kerman* with him) for Jackson Lewis, LLP, & another.

[1] Winokur, Serkey & Rosenberg, P.C. (Winokur); Winokur, Winokur, Serkey & Serkey, P.C.; Winokur, Winokur, Serkey & Rosenberg, P.C.; Jackson Lewis, LLP; and David Kerman.

*Katherine H. Marques* for Martha Awiszus & others.

The following submitted briefs for amici curiae:

*Beverly I. Ward* for Massachusetts Commission Against Discrimination.

*Ben Robbins & Martin J. Newhouse* for New England Legal Foundation & another.

*Nina Joan Kimball* for Massachusetts Employment Lawyers Association & others.

Spina, J. In the present action, Global NAPs, Inc. (Global), a telecommunications company, seeks to recover damages from its former attorneys, Martha Awiszus and David Kerman, and their respective law firms, Winokur, Serkey & Rosenberg, P.C. (Winokur), and Jackson Lewis, LLP (Jackson Lewis) (collectively, the defendants),[2] for negligence, breach of contract, and loss of chance. The claims set forth in Global's three-count complaint arose from the defendants' failure to file a timely appeal from a jury verdict in excess of $1 million against Global in an underlying employment discrimination case (the Stephens litigation). The defendants asserted counterclaims against Global for breach of contract and quantum meruit, and they asserted cross claims against each other for indemnification and contribution. Global then filed a motion for partial summary judgment,[3] and the defendants filed a cross motion for summary judgment. On April 1, 2009, a judge in the Superior Court allowed the defendants' motion and dismissed Global's complaint. In response to the defendants' subsequent motion for relief from judgment pursuant to Mass. R. Civ. P. 60, 365 Mass. 828 (1974), pertaining to the defendants' asserted counterclaims, the judge allowed the motion, vacated the April 1, 2009, judgment, and directed entry of a separate and final judgment on May 7, 2009, pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), dismissing Global's complaint and preserving the defendants' counterclaims. Global appealed, and we granted its application

---

[2]Apart from Jackson Lewis, LLP, the other law firms named as defendants were predecessors of Winokur.

[3]The motion by Global NAPs, Inc. (Global), for partial summary judgment related to counts I and II of its complaint, alleging negligence and breach of contract. Global stated that, in the event that the motion was allowed, there would be no need to address count III, alleging loss of chance.

for direct appellate review. We now reverse and remand for further proceedings in accordance with this opinion.[4]

1. *Background.* The procedural history of the Stephens litigation is extensive, particularly with respect to the postjudgment period. For simplicity's sake, we relate only so much as necessary to understand the specific issues raised.

Beginning in May, 1999, Global employed Sandy Stephens as a housekeeper for its president, Frank Tiberius Gangi. Late that same year, Stephens informed Gangi that she was pregnant. Around June 30, 2000, Stephens told Gangi and her supervisor, Janet Lima, that her last day of work before maternity leave would be July 14, 2000. According to Stephens, Lima told her that if she gave birth by cesarean section, then she could extend her leave until October 2, 2000. Lima also told Stephens that her maternity leave would be unpaid. Stephens gave birth on August 2, 2000, by cesarean section, and she so informed Lima. In anticipation of her return to work, Stephens called Lima on September 27, 2000, and learned that she had been fired from her job.

Stephens commenced an action in the Superior Court against Global and Gangi, alleging that they had violated the Massachusetts Maternity Leave Act (MMLA), G. L. c. 149, § 105D, by terminating her from employment while she was on maternity leave.[5] Martha Awiszus of Winokur represented Global and Gangi in the Stephens litigation. The case proceeded to trial on July 19, 2004. At the close of Stephens's case, and again at the conclusion of all of the evidence, Global and Gangi moved for a directed verdict, arguing that Stephens was not entitled to the protections afforded by the MMLA because her maternity leave had exceeded eight weeks. The motions were denied. On July

[4]We acknowledge the amicus brief filed by Massachusetts Employment Lawyers Association, Massachusetts Paid Leave Coalition, Fair Employment Project, Inc., Massachusetts AFL-CIO, Legal Assistance Corporation of Central Massachusetts, and Jewish Alliance for Law and Social Action; the amicus brief filed by the Massachusetts Commission Against Discrimination; and the amicus brief filed by the New England Legal Foundation and Associated Industries of Massachusetts.

[5]Stephens initially filed a charge of discrimination with the Massachusetts Commission Against Discrimination (MCAD). See G. L. c. 151B, § 5. She subsequently removed her complaint to the Superior Court. See G. L. c. 151B, § 9.

23, 2004, a jury returned special verdicts against Global for compensatory damages in the amount of $1,366,165 and punitive damages in the amount of $1 million, and against Gangi, for aiding and abetting Global, in the amount of $136,000. Global and Gangi advised Awiszus that they wanted to appeal from the jury verdicts.

Global and Gangi filed a timely motion for judgment notwithstanding the verdict (judgment n.o.v.) or, in the alternative, for a new trial or remittitur. According to Awiszus, shortly after filing that motion, she received a telephone call from Global's general counsel informing her that Global had hired appellate counsel, Kerman of Jackson Lewis, and that she was to assist him in any way that Kerman requested. In a detailed memorandum of decision and order dated February 17, 2005, the judge in the Stephens case denied the motion for judgment n.o.v., with the exception of the claim brought against Gangi for aiding and abetting Global, which was allowed.[6] The judge also denied the motion for a new trial as to liability but allowed the motion as to the issue of damages unless Stephens accepted a remittitur within thirty days. On March 11, 2005, Stephens filed a notice of acceptance of remittitur of compensatory damages in the amount of $1,012,305.12, and of zero punitive damages. Global then filed a motion for partial reconsideration of the court's order with respect to the determination of Stephens's damages for front pay and emotional distress, which the judge denied on April 6, 2005.

On April 19, 2005, Global and Gangi filed a notice of appeal. They also filed a motion for an extension of time, pursuant to Mass. R. A. P. 4 (c), as appearing in 378 Mass. 928 (1979), "to

---

[6]The judge concluded that the jury reasonably could have found that, although Stephens's absence from work exceeded eight weeks, Global allowed her to take an extended maternity leave, assured her that she could return to her position after the leave, and then terminated her in violation of the Massachusetts Maternity Leave Act (MMLA), G. L. c. 149, § 105D. On the other hand, the judge stated that, where Lima made the decisions concerning Stephens's employment, the jury could not have reasonably found that Gangi knew the requirements of the MMLA, knew that Lima had violated these requirements, and acted with deliberate indifference to Stephens's rights. As such, the evidence did not support a finding that Gangi aided and abetted Global's violation of the MMLA. The verdict against Gangi was vacated, and judgment entered in his favor.

the extent such motion [was] deemed necessary."[7] Stephens filed a motion to strike the appeal as untimely. In a memorandum of decision and order dated July 28, 2005, the judge determined that the notice of appeal was untimely, denied the motion to extend the filing deadline, and stated that Global and Gangi had not demonstrated excusable neglect for the late filing in light of well-known case law holding that the filing of a motion for reconsideration does not toll the time period for filing a notice of appeal. See *Curly Customs, Inc.* v. *Pioneer Fin.*, 62 Mass. App. Ct. 92, 96-97 (2004); *Selby Assocs.* v. *Boston Redevelopment Auth.*, 27 Mass. App. Ct. 1188, 1189-1190 (1989). The judge allowed Stephens's motion to strike the appeal. On October 25, 2005, a corrected judgment in the amount of $1,322,071.78 entered for Stephens pursuant to Mass. R. Civ. P. 58 (a), as amended, 371 Mass. 908 (1977).

Global filed timely notices of appeal from the judge's July 28, 2005, order denying its motion for an extension of time pursuant to Mass. R. A. P. 4 (c), and from the October 25, 2005, corrected judgment. The Appeals Court dismissed Global's appeal from the judgment in Stephens's favor on the ground that it was untimely, but considered arguments pertaining to certain damages issues that had been raised in postjudgment motions, and remanded the case for recomputation of the front pay award to reflect present value and for correction of the remittitur amount. See *Stephens* v. *Global NAPs*, 70 Mass. App. Ct. 676, 680-687 (2007). This court denied Global's application for further appellate review. See *Stephens* v. *Global NAPS*, 450 Mass. 1106 (2007). After remand, a revised judgment entered in the Superior Court on June 6, 2008, against Global and in favor of Stephens, and on September 15, 2008, execution on the judgment issued in the amount of $1,157,839.91.

2. *Substantive merits of the Stephens litigation.* The basis of Global's professional negligence action against the defendants is Global's contention that it would have prevailed in the Stephens litigation if the defendants had filed Global's appeal in a timely manner. Accordingly, we begin by considering the

---

[7]The notice of appeal was due on or before April 10, 2005, thirty days after Stephens's acceptance of the remittitur. See *Stephens* v. *Global NAPs*, 70 Mass. App. Ct. 676, 680-681 & n.6 (2007).

merits of that appeal.[8] Global argues that Stephens was not entitled to the protections afforded by the MMLA because she was absent from work for longer than eight weeks. We agree.

The MMLA provides that a female employee who has completed her employer's initial probationary period or, if there is no such probationary period, has been employed full time by the same employer for at least three consecutive months, and "who is absent from such employment *for a period not exceeding eight weeks* for the purpose of giving birth . . . , and who shall give at least two weeks' notice to her employer of her anticipated date of departure and intention to return, shall be restored to her previous, or a similar, position with the same status, pay, length of service credit and seniority, wherever applicable, as of the date of her leave" (emphasis added). G. L. c. 149, § 105D. Such eight-week period, statutorily referred to as "maternity leave," may be with or without pay at the discretion of the employer. *Id.* The MMLA further provides that nothing in § 105D "shall be construed to affect any bargaining agreement or company policy which provides for greater or additional benefits than those required under this section." *Id.* The Massachusetts Commission Against Discrimination (MCAD) is responsible for enforcing the MMLA because the Legislature has determined that it shall be an "unlawful practice" for an employer "to refuse to restore certain female employees to employment following their absence by reason of a maternity leave *taken in accordance with* [G. L. c. 149, § 105D,] or to otherwise fail to comply with the provisions of said section" (emphasis added). G. L. c. 151B, § 4 (11A). See G. L. c. 151B, § 3 (6) (conferring authority on MCAD to "receive, investigate and pass upon complaints of unlawful practices").

Pursuant to G. L. c. 151B, § 3 (5),[9] the Legislature has empowered MCAD to promulgate rules and regulations to carry

---

[8]Whether the plaintiff in a legal malpractice action would have prevailed on appeal in the underlying case is a matter of law to be decided by the court. See *Romano* v. *Weiss*, 26 Mass. App. Ct. 162, 170 n.18 (1988), citing *Stafford* v. *Garrett*, 46 Or. App. 781 (1980). See also 4 R.E. Mallen & J.M. Smith, Legal Malpractice § 31:52, at 752-754 (2010) (resolution of appeal can and must be made by trial judge as issue of law, based on review of record of underlying action).

[9]General Laws c. 151B, § 3, states, in relevant part: "[MCAD] shall have

out the provisions of c. 151B, including enforcement of the MMLA. See *Solomon* v. *School Comm. of Boston*, 395 Mass. 12, 16 (1985). In accordance with this statutory grant of authority, MCAD has promulgated regulations relating to maternity leave that essentially mirror the language of G. L. c. 149, § 105D. See 804 Code Mass. Regs. § 3.01(8) (1995). See also 804 Code Mass. Regs. § 8.01 (1993). In addition, pursuant to G. L. c. 151B, § 2,[10] MCAD has issued guidelines, dated April 12, 2000, "to provide guidance to practitioners, employers, individuals and MCAD staff about how to interpret, apply and enforce" the MMLA. See Massachusetts Commission Against Discrimination: Guidelines on the Massachusetts Maternity Leave Act (2000) (MCAD Guidelines). As relevant to the Stephens litigation, § V of the MCAD Guidelines, entitled "Job Restoration After Leave," provides, in pertinent part: "Nothing in the MMLA shall be construed to affect any bargaining agreement, employment agreement or company policy providing benefits that are greater than, or in addition to, those required under [G. L. c. 149, § 105D]. An employer may grant a longer maternity leave than required under the MMLA. *If the employer does not intend for full MMLA rights to apply to the period beyond eight weeks, however, it must clearly so inform the employee in writing prior to the commencement of the leave*" (emphasis added).

In her amended complaint, Stephens asserted only *one* claim against Global. She alleged that Global never informed her, "either verbally or in writing, that she would not be restored to her previous or similar position at the end of her maternity leave if her leave extended beyond eight weeks, as required by the MMLA and regulations thereunder." Consequently, Stephens continued, Global violated the MMLA and discriminated against her on the basis of her maternal status in violation of G. L. c. 149, § 105D.

---

the following functions, powers and duties: . . . (5) To adopt, promulgate, amend, and rescind rules and regulations suitable to carry out the provisions of this chapter, and the policies and practice of [MCAD] in connection therewith."

[10]General Laws c. 151B, § 2, states that MCAD "shall formulate policies to effectuate the purposes of this chapter and may make recommendations to agencies and officers of the commonwealth or its political subdivisions in aid of such policies and purposes."

Our primary duty in interpreting a statute is "to effectuate the intent of the Legislature in enacting it." *International Org. of Masters* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 392 Mass. 811, 813 (1984). It is a familiar canon of statutory construction that "statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001). It is not the province of courts to add words to a statute that the Legislature did not choose to put there in the first instance. See *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 (1999). Where, as here, the language of a statute is clear and unambiguous, it is conclusive as to the intent of the Legislature. See *Pyle* v. *School Comm. of S. Hadley*, 423 Mass. 283, 285 (1996); *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 839 & n.3 (1986).

Furthermore, a properly promulgated regulation has the force of law and must be given the same deference accorded to a statute. See *Solomon* v. *School Comm. of Boston*, *supra*, quoting *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, 723, cert. denied sub nom. *Formaldehyde Inst., Inc.* v. *Frechette*, 464 U.S. 936 (1983); *Massachusetts State Pharm. Ass'n* v. *Rate Setting Comm'n*, 387 Mass. 122, 127 (1982). Guidelines issued by an administrative agency, on the other hand, do not have the same status as regulations adopted pursuant to the Administrative Procedure Act, G. L. c. 30A, § 1 (5).[11] As pertinent to the present matter, the MCAD Guidelines represent MCAD's interpretation of G. L. c. 151B, and although they are

[11]The Administrative Procedure Act defines a "[r]egulation" as including "the whole or any part of every rule, regulation, standard or other requirement of general application and future effect, including the amendment or repeal thereof, adopted by an agency to implement or interpret the law enforced or administered by it." G. L. c. 30A, § 1 (5). The term does not include "regulations concerning only the internal management or discipline of the adopting agency or any other agency, and not substantially affecting the rights of or the procedures available to the public or that portion of the public affected by the agency's activities." *Id.* In some instances, what have been termed "guidelines" are, more accurately, "regulations." See, e.g., 803 Code Mass. Regs. § 1.40 (2004) ("Specific Guidelines" for sex offender classification); 804 Code Mass. Regs. § 3.01 (1995) ("Employment Discrimination Guidelines"). Here, however, the MCAD Guidelines have not been adopted as legally enforceable "regulations."

entitled to substantial deference, they do not carry the force of law. See *Dahill* v. *Police Dep't of Boston*, 434 Mass. 233, 239 (2001), and cases cited. See also *Leach* v. *Commissioner of the Mass. Rehabilitation Comm'n*, 63 Mass. App. Ct. 563, 567 (2005) (guidelines promulgated by MCAD are persuasive, but not binding, interpretive assistance concerning employer's obligations to employees).

The language of the MMLA is clear and unambiguous. Female employees who satisfy certain preliminary conditions (not challenged here) are afforded rights under the MMLA when they are absent from employment "for a period *not exceeding eight weeks* for the purpose of giving birth" (emphasis added). G. L. c. 149, § 105D. Once a female employee is absent from employment for more than eight weeks, she is no longer within the purview of the MMLA and, consequently, is not afforded the protections conferred by the statute. Contrary to the allegations set forth in Stephens's amended complaint, neither the MMLA nor the regulations promulgated thereunder require an employer to notify an employee whether MMLA rights will apply to the period beyond eight weeks if the employee is allowed to extend her maternity leave. A female employee is only entitled to MMLA rights when she is absent from employment for no more than eight weeks. To the extent that the MCAD Guidelines suggest that a female employee may be entitled to MMLA rights beyond the eight-week period, the MCAD Guidelines are inconsistent with G. L. c. 149, § 105D. See *Telles* v. *Commissioner of Ins.*, 410 Mass. 560, 564-565 (1991) (agency has no authority to promulgate rules and regulations that conflict with or exceed authority conferred by statute). Even absent such inconsistency, the MCAD Guidelines do not have the force of law and, therefore, cannot be the source of a remedy for Stephens's termination from employment. An employee who is permitted to extend her maternity leave past eight weeks may have other rights that protect her from unlawful termination, but they are not statutory rights under G. L. c. 149, § 105D.[12]

---

[12]Where, as here, an employee's maternity leave was *not* taken in accordance with G. L. c. 149, § 105D (because it exceeded eight weeks), and the employer subsequently refused to restore the employee to employment, the employer did not commit an "unlawful practice" pursuant to G. L. c. 151B, § 4 (11A).

There is a recognition in both the MMLA and the regulations promulgated thereunder that an employer, for a variety of reasons, may allow a female employee to be absent from work for more than eight weeks when giving birth to or adopting a child. See G. L. c. 149, § 105D; 804 Code Mass. Regs. § 3.01(8)(f) (1995). Typically, such additional benefits arise in the context of a bargaining agreement or company policy or, as alleged here, an oral representation from employer to employee. See *id.* These additional benefits are separate from the protections afforded under the MMLA. See *id.* Where an employer provides such additional benefits to a female employee and subsequently takes an adverse employment action, the employee's recourse is the initiation of a common-law action for breach of contract, breach of oral representations, detrimental reliance, or the like. Here, Stephens did not raise any of these claims in her amended complaint. The only claim against Global was for a violation of G. L. c. 149, § 105D. Because we have concluded that Stephens was not entitled to the protections afforded by the MMLA, given that she was absent from employment for more than eight weeks, the jury verdict in her favor would have been overturned on appeal had the appeal been filed in a timely manner.[13,14]

[13]Contrary to Justice Botsford's suggestion, we do not read the language in the third paragraph of G. L. c. 149, § 105D, pertaining to additional maternity benefits pursuant to a bargaining agreement or company policy, as wholly unconnected to the eight-week limitation on maternity leave benefits set forth in the first paragraph of § 105D. *Post* at 503-506. Rather, the language in the third paragraph is an acknowledgment by the Legislature that maternity benefits may exist separate and apart from those guaranteed by the MMLA and that nothing in § 105D should be construed to interfere with — to "affect" — such other benefits. Maternity rights conferred by an employer pursuant to contract or policy are simply different from those conferred under the MMLA. Here, Stephens challenged only the denial of her statutory rights under the MMLA, not the denial of benefits that may have been separately promised by Global. We agree with Justice Botsford that, as a general matter, an employer cannot use the eight-week statutory limit in § 105D as a vehicle to ignore its own agreement to offer greater maternity benefits. *Post* at 505 & n.1. In this case, however, Stephens's only contention in her complaint was that Global failed to inform her, as required by the MMLA and related regulations, that she would not be restored to her job if her maternity leave extended past eight weeks. As we have stated, the MMLA and related regulations simply impose no such requirement on employers.

[14]In light our resolution of this issue, we need not consider Global's argument that the judge's instructions to the jury on the MMLA and the MCAD Guidelines were inaccurate.

3. *Professional negligence of defendants.* Returning to the case presently before us, Global points out that the defendants were all counsel of record at the time the notice of appeal in the Stephens litigation should have been filed on or before April 10, 2005. Global contends that the defendants owed to it a duty of care, that they committed a breach of this duty by failing to file the appeal in a timely manner, that they did not demonstrate excusable neglect for the untimely filing,[15] and that, as a result, Global was obligated to pay substantial damages to Stephens. Global therefore argues that its motion for partial summary judgment, see note 3, *supra*, should have been allowed because the defendants' professional negligence was established as a matter of law.[16] We agree.[17]

---

[15]When considering the scope of Global's appeal in the Stephens litigation, the Appeals Court concluded that the judge "acted within his discretion in deciding that Global had failed to show excusable neglect" such as would have warranted an extension of time to file its notice of appeal under Mass. R. A. P. 4 (c), as amended, 378 Mass. 928 (1979). *Stephens* v. *Global NAPs*, 70 Mass. App. Ct. 676, 683 (2007). This final determination by the Appeals Court is binding on all the parties.

[16]"The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." *Cargill, Inc.* v. *Beaver Coal & Oil Co.*, 424 Mass. 356, 358 (1997). See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. See *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989). Any doubts as to the existence of a genuine issue of material fact are to be resolved against the party moving for summary judgment. See *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982).

[17]In the argument portion of its brief to this court, Winokur has asserted that Global's appeal should be dismissed because Global failed to docket it in a timely manner pursuant to Mass. R. A. P. 10 (a) (1), as amended, 435 Mass. 1601 (2001). Rule 10 (a) (1), applicable to civil cases, provides in pertinent part: "Within ten days after receiving from the clerk of the lower court notice of assembly of the record, . . . each appellant . . . shall pay to the clerk of the appellate court the docket fee fixed by law, and the clerk shall thereupon enter the appeal of such appellant . . . upon the docket." If an appellant fails to comply with this rule, "the lower court may, on motion with notice by any appellee, dismiss the appeal, but only upon a finding of inexcusable neglect." Mass. R. A. P. 10 (c), as amended, 417 Mass. 1602 (1994). Winokur points out that *it* received notice of assembly of the record on August 21, 2009, but that Global did not docket its appeal in the Appeals Court until September 10, 2009. In its opposition to Winokur's "motion to dismiss," Global submitted to this court an affidavit from counsel, originally filed with the Appeals Court,

"An attorney owes his client an obligation to exercise a reasonable degree of care and skill in the performance of his legal duties." *Pongonis* v. *Saab*, 396 Mass. 1005, 1005 (1985). "To prevail on a claim of negligence by an attorney, a client must demonstrate that the attorney failed to exercise reasonable care and skill in handling the matter for which the attorney was retained . . . ; that the client has incurred a loss; and that the attorney's negligence is the proximate cause of the loss . . ." (citations omitted). *Colucci* v. *Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.*, 25 Mass. App. Ct. 107, 111 (1987). See *McLellan* v. *Fuller*, 226 Mass. 374, 377-378 (1917). Expert testimony is generally necessary to establish that an attorney failed to meet the standard of care owed in the particular circumstances. See *Pongonis* v. *Saab, supra.* However, such testimony is not essential where "the claimed malpractice is so gross or obvious that laymen can rely on their common knowledge to recognize or infer negligence," or where an attorney disobeys the lawful instructions of his client and a loss ensues for which the attorney is responsible. *Id.* See *Gilbert* v. *Williams*, 8 Mass. 51, 57 (1811). See also 4 R.E. Mallen & J.M. Smith, Legal Malpractice § 31:52, at 745 (2010) (errors of common knowledge frequently involve failing to follow client's instruction to appeal or not filing appeal in timely manner). A plaintiff who alleges that his attorney was negligent in the prosecution of a claim must demonstrate "that he probably would have obtained a better result had the attorney exercised adequate skill and care." *Fishman* v. *Brooks*, 396 Mass. 643, 647 (1986). See *Jernigan* v. *Giard*, 398 Mass. 721, 723 (1986). The issue whether an attorney's negligence was a proximate cause of a client's loss may be resolved at the summary judgment stage. See *Leavitt* v. *Mizner*, 404 Mass. 81, 88-92 (1989); *Girardi* v. *Gabriel*, 38 Mass. App. Ct. 553, 558-559 (1995).

---

stating that Global never received notice of assembly of the record and did not learn about it until September 10, 2009, when counsel checked the trial court's Web site, at which point counsel immediately paid the docket fee to the Appeals Court, and Global's appeal was accepted. Notwithstanding the argument presented in its brief here, Winokur never filed a motion to dismiss Global's appeal either in the Superior Court or in the Appeals Court. Moreover, Global docketed its appeal on the same day that it learned the record had been assembled. We decline to dismiss Global's appeal.

The defendants have not challenged the fact that they had an attorney-client relationship with Global during the time that the notice of appeal in the Stephens litigation should have been filed, or the fact that such notice was untimely filed. Moreover, the Appeals Court already has determined that there was no basis for a claim of excusable neglect with respect to the late filing. See note 15, *supra.* No expert testimony is necessary to establish that the defendants did not meet the standard of reasonable care owed to Global. Given our conclusion that Global's appeal in the Stephens litigation would have been successful, the defendants' failure to file a timely appeal constitutes clear and obvious negligence, as a consequence of which Global was required to pay Stephens over $1 million in damages that it otherwise would not have had to pay. Accordingly, Global's motion for partial summary judgment in the present action should have been allowed.[18]

The defendants assert that Global has not established their negligence as a matter of law because, even assuming that Global's appeal were successful, the case could be remanded for retrial and Stephens could prevail by asserting new theories of liability against Global, including breach of an oral representation.[19] As such, the defendants continue, Global has not proved that it likely would have done better in the Stephens

---

[18]The judge below granted the defendants' cross motion for summary judgment with respect to all of Global's claims, including count III of its complaint, alleging loss of chance. In its brief in the present appeal, Global states that if this court concludes that Global would have been successful in the Stephens litigation, then we need not reach Global's loss of chance claim. Accordingly, we do not consider this claim.

[19]Contrary to Awiszus's contention, the so-called "savings statute" or "renewal statute," G. L. c. 260, § 32, does not confer on Stephens the right to commence a new action against Global. That statute provides in relevant part: "If an action duly commenced within the time limited in this chapter is dismissed . . . for any matter of form, or if, after judgment for the plaintiff, the judgment of any court is vacated or reversed, the plaintiff . . . may commence a new action for the same cause within one year after the dismissal or other determination of the original action . . . ." In *Liberace v. Conway*, 31 Mass. App. Ct. 40, 45 (1991), the court stated that, "[a]s to a case adjudicated on the merits, principles of res judicata apply and the renewal statute, G. L. c. 260, § 32, has no pertinence." Moreover, although a cause of action for an alleged violation of the MMLA and a cause of action for breach of an oral representation would share some common facts, they are not "the same cause."

litigation absent the defendants' alleged malpractice. The defendants misconstrue the procedural posture of this case. Stephens chose to proceed against Global on a single theory of liability — Global's purported violation of the MMLA. At the close of Stephens's case, and again at the conclusion of all the evidence, Global moved for a directed verdict, arguing that Stephens was not entitled to the protections afforded by the MMLA because her maternity leave had exceeded eight weeks. The motions were denied. Following the jury's verdict in favor of Stephens, Global filed a timely motion for judgment n.o.v., raising the same argument that Stephens was not covered by the MMLA. The judge denied the motion. Given our conclusion here that Stephens was not entitled to the protections afforded by the MMLA because she was absent from employment for more than eight weeks, Global's motions for a directed verdict or for judgment n.o.v. should have been allowed. As such, final judgment would have entered for Global. See, e.g., *Montes* v. *Massachusetts Bay Transp. Auth.*, 446 Mass. 181, 187 (2006); *Uno Restaurants, Inc.* v. *Boston Kenmore Realty Corp.*, 441 Mass. 376, 389 (2004); *Brady* v. *Nestor*, 398 Mass. 184, 190 (1986).

Awiszus and Winokur assert that they should bear no liability for professional negligence because they played an "extremely limited role" in the posttrial representation of Global during the Stephens litigation. More specifically, Awiszus claims that Global's general counsel informed her that she should perform those tasks assigned to her by Kerman of Jackson Lewis, which did not include any work pertaining to the filing of the notice of appeal. Further, Awiszus continues, to the extent that the allowance of the defendants' motion for summary judgment is reversed, a trial would be necessary to resolve disputed facts as to the scope of Awiszus's legal representation.

After the return of the jury verdict in the Stephens litigation, Frank Gangi telephoned Awiszus and told her that they would appeal. When the notice of appeal was filed on April 19, 2005, a facsimile of Awiszus's signature appeared on it, having been placed there by Kerman with Awiszus's permission. Awiszus did not file a motion to withdraw as Global's counsel until February 16, 2006, and it was allowed on March 7, 2006. "Both the signing of motions or pleadings and the filing of a notice of appear-

ance indicate that an attorney is participating in the litigation of a case." *Boswell* v. *Zephyr Lines, Inc.*, 414 Mass. 241, 248 (1993), citing Mass. R. Civ. P. 11 (b), 365 Mass. 753 (1974). "[O]nce an attorney has been recognized as the representative of a party on the record, he shall be presumed so to continue, until his authority is revoked, and his appearance withdrawn, and due notice thereof given." *Lewis* v. *Sumner*, 13 Met. 269, 272 (1847). Accordingly, the defendants here all bear liability for professional negligence with respect to their representation of Global.

4. *Conclusion.* For the foregoing reasons, the final judgment of the Superior Court entered on May 7, 2009, is reversed. The case is remanded for the entry of partial summary judgment for Global on the issue of the defendants' liability, and for a determination of the amount of Global's damages. On remand, the judge shall apportion those damages between Winokur and Jackson Lewis on the parties' cross claims for indemnification and contribution.

*So ordered.*

BOTSFORD, J. (concurring in part and dissenting in part, with whom Gants, J., joins; and with whom Marshall, C.J., joins as to parts 1, 3, and 4). The issue at the core of this case is the proper interpretation of the Massachusetts Maternity Leave Act (MMLA), G. L. c. 149, § 105D. The motion judge allowed the defendant attorneys' motion for summary judgment on the ground that the judgment against Global NAPs, Inc. (Global), as the defendant in the underlying Stephens discrimination case, was based on a correct reading of the MMLA and particularly the interpretative guidelines (MCAD Guidelines) of the Massachusetts Commission Against Discrimination (MCAD). Accordingly, the judge reasoned, if the attorneys on Global's behalf had filed a timely appeal from that judgment, the Appeals Court would have found no error, and therefore Global suffered no harm as matter of law. This court disagrees, and concludes, based on its reading of the MMLA, that not only were the attorneys not entitled to summary judgment, but Global was. In my view, the court's interpretation of the MMLA is incomplete and, as applied to this case, incorrect. But I am also of the view

that the construction adopted by the trial judge in the Stephens case and indorsed by the motion judge here — a construction essentially based on the MCAD Guidelines — was flawed as well. For the reasons I explain, I conclude that both the attorneys' and Global's motions for summary judgment should have been denied.

1. As it bears on this case, the MMLA has two essential provisions. The first is in the statute's first paragraph:

> "A female employee who . . . has been employed by the same employer for at least three consecutive months as a full-time employee, who is absent from such employment for a period not exceeding eight weeks for the purpose of giving birth . . . said period to be hereinafter called maternity leave, and who shall give at least two weeks' notice to her employer of her anticipated date of departure and intention to return, shall be restored to her previous, or a similar, position with the same status, pay, length of service credit and seniority, wherever applicable, as of the date of her leave."

G. L. c. 149, § 105D, first par. The second is a sentence in the third paragraph:

> "Nothing in this section shall be construed to affect any bargaining agreement or company policy which provides for greater or additional benefits than those required under this section."

*Id.* at § 105D, third par.

As the court rightly concludes, the first paragraph of the statute clearly limits MMLA benefits — and, of particular relevance here, the retention of the employee's job at the same pay and status — to no more than eight weeks. *Ante* at 494. In the court's view, that is the *only* protection the statute provides. *Ante* at 497 ("Once a female employee is absent from employment for more than eight weeks, she is no longer within the purview of the MMLA and, consequently, is not afforded the protections conferred by the statute").

The court pays lip service to the sentence I have quoted from the statute's third paragraph (see *ante* at 498), but appears to read

it as essentially unconnected to the first paragraph. It is a cardinal rule of statutory construction, however, that no provision in a statute "is to be regarded as superfluous, but each is to be given its ordinary meaning without overemphasizing its effect upon the other terms appearing in the statute, so that the enactment considered as a whole shall constitute a consistent and harmonious statutory provision capable of effectuating the presumed intention of the Legislature." *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 352 Mass. 617, 618 (1967), quoting *Bolster* v. *Commissioner of Corps. & Taxation*, 319 Mass. 81, 84-85 (1946). See *DiFiore* v. *American Airlines, Inc.*, 454 Mass. 486, 491 (2009) ("Where possible, we construe the various provisions of a statute in harmony with one another, recognizing that the Legislature did not intend internal contradiction").

We have in the MMLA both the eight-week limitation on the statutorily required maternity leave in the first paragraph and the Legislature's express recognition in the third paragraph that employers may provide greater benefits than does the MMLA itself. And, of particular relevance here, this recognition is accompanied by the Legislature's directive that the statutory limitation in the first paragraph is not to "affect" those more generous benefits. We need to read the provisions of the first paragraph and the third paragraph as working in harmony, if that is possible to do. It is. The third paragraph's directive, read with the first paragraph's limitations, means that an employer cannot promise an employee (by policy or, as here, by agreement) a maternity leave of more than eight weeks with a commitment to restore her to her job at the leave's conclusion and then, when the employee has not returned to work within eight weeks in reliance on the employer's agreement, interpose the MMLA's eight-week limitation as the basis for refusing to take the employee back. An employer following such a course is using the statutory limitation as a shield to "affect" — that is, to ignore — its own agreement to offer a longer leave and a job on return, a course of action plainly prohibited by the statute's third paragraph.[1]

This interpretation of the MMLA not only gives meaning to

---

[1]Global NAPs, Inc. (Global), argues that the language in the third paragraph

all its provisions but also advances the explicit legislative directive "that the provisions of c. 151B 'shall be construed liberally' for the accomplishment of the remedial purposes of the statute." *Dahill* v. *Police Dep't of Boston,* 434 Mass. 233, 240 (2001), quoting G. L. c. 151B, § 9.[2] See *Cormier* v. *Pezrow New England, Inc.,* 437 Mass. 302, 304 (2002), quoting *Charland* v. *Muzi Motors, Inc.,* 417 Mass. 580, 583 (1994), and G. L. c. 151B, § 9 ("One of the principal purposes of G. L. c. 151B is to 'protect the citizens of the Commonwealth against employment discrimination,' . . . and its provisions are to be 'construed liberally for the accomplishment' of that purpose"). See also *Thurdin* v. *SEI Boston, LLC,* 452 Mass. 436, 441 (2008).

2. There is another way of looking at the question of interpretation raised in this case. As indicated, I agree that when an employer contracts to offer maternity leave that exceeds eight weeks, this greater contractual benefit does not automatically become "maternity leave" protected by the MMLA. But where (1) an employer has induced an employee to relinquish her rights under the MMLA by offering her maternity leave greater than eight weeks without informing her that she will lose the protection of the MMLA if she remains on leave beyond eight weeks, (2) the employee relies on this offer by accepting the extended leave, and (3) the employer refuses to reinstate her

---

of the Massachusetts Maternity Leave Act (MMLA), G. L. c. 149, § 105D, concerning "greater or additional benefits" means that "if employers offer greater benefits, such benefits 'shall not be affected' by any provision of the MMLA," but are rather matters of private contract only. Global has rephrased the statute in making this argument. I agree with Global's general point that where an employer contracts to offer a maternity leave that exceeds eight weeks, this greater contractual benefit does not automatically become "maternity leave" protected by the MMLA. But I read the statutory language actually used by the Legislature in the MMLA's third paragraph ("Nothing in this section shall be construed to affect any bargaining agreement or company policy which provides for greater or additional benefits than those required under this section") as reflecting a legislative desire to prevent an employer from using the MMLA as a means to extricate itself from its own more generous contractual commitments.

[2] As the court recognizes, G. L. c. 151B comes into play because the Legislature has defined as an "unlawful practice" under G. L. c. 151B, § 4, an employer's refusal to restore an employee to employment following a maternity leave taken under the MMLA, or failure otherwise to comply with the MMLA. G. L. c. 151B, § 4 (11A).

when she seeks to return to her job, the employer is equitably estopped from invoking the time limitation of the MMLA.[3]

This court and the Appeals Court have recognized the doctrine of equitable estoppel in other settings, although not always finding that it applied in the particular case. See, e.g., *Bongaards* v. *Millen*, 440 Mass. 10, 15-16 (2003) (declaratory judgment action concerning trust property; court recognized doctrine of equitable estoppel but found that claim not established); *Moran* v. *Gala*, 66 Mass. App. Ct. 135, 139-142 (2006) (plaintiff property owners equitably estopped from asserting claim of adverse possession against neighbor); *Harrington* v. *Fall River Hous. Auth.*, 27 Mass. App. Ct. 301, 307-310 (1989) (equitable estoppel principles not generally applicable against government, and plaintiffs failed to make out traditional elements of equitable estoppel against defendant housing authority in any event); *Cellucci* v. *Sun Oil Co.*, 2 Mass. App. Ct. 722, 728-732 (1974), *S.C.*, 368 Mass. 811 (1975) (defendant oil company equitably estopped from denying it had agreed to purchase plaintiff's property).

Several Federal courts, considering cases brought under the Federal Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 et seq. (2006), have applied principles of equitable estoppel in determining whether the FMLA has been violated in somewhat analogous circumstances, that is, where an employee has relied on information his or her employer provided relating to entitlement to FMLA leave, has taken the leave, and then is terminated for having done so because, it turns out, the information provided was incorrect. See, e.g., *Minard* v. *ITC Deltacom Communications, Inc.*, 447 F.3d 352, 358-359 (5th Cir. 2006); *Duty* v. *Norton-Alcoa Proppants*, 293 F.3d 481, 493-494 (8th Cir. 2002), and cases cited. See also *Kosakow* v. *New Rochelle Radiology Assocs.*, 274 F.3d 706, 724-725 (2d Cir. 2001). We have often applied Federal case law interpreting cognate Federal antidiscrimination statutes when looking to interpret G. L. c. 151B. See, e.g., *Wheatley* v. *American Tel. & Tel. Co.*, 418 Mass. 394, 397 (1994). The MMLA and the FMLA are cognate statutes with ties to antidiscrimination laws, and we should fol-

---

[3]The language in the third paragraph of the MMLA that I discuss in part 1, *supra*, represents, in effect, a statutory expression of estoppel; I address here the separate doctrine of equitable estoppel.

low the Federal courts in their application of equitable estoppel principles here because the approach appropriately serves to protect the interests of those for whose benefit the statutes most certainly were enacted, namely, employees.

The remedy in contract that the court contends would be available to an employee who is not reinstated is, in practice, largely illusory and, where it is not an illusion, far weaker than the remedy available under the MMLA. It is illusory because, while the MMLA expressly provides that a female employee returning from maternity leave "shall be restored to her previous, or a similar, position with the same status, pay, length of service credit and seniority . . . as of the date of her leave," G. L. c. 149, § 105D, the "contract" whereby an employer grants additional maternity leave may be far more ambiguous as to what is promised. It is weaker because, while an employee who prevails on a MMLA claim is entitled to an award of her attorney's fees and costs, and the possibility of punitive damages, G. L. c. 151B, §§ 4 (11A), 9, an employee with a remedy only in contract is entitled to compensatory damages alone.

3. While I thus conclude that the court's construction of the MMLA is overly narrow, I agree that the MCAD Guidelines cannot serve as "the source of a remedy for Stephens's termination from employment." *Ante* at 497. The MCAD Guidelines represent policies adopted pursuant to G. L. c. 151B, § 2. The Legislature has given the MCAD separate statutory authority to promulgate regulations. G. L. c. 151B, § 3 (5). This court gives deference to MCAD Guidelines when we are called on to interpret a particular term or phrase in c. 151B. See, e.g., *Modern Cont./Obayashi* v. *Massachusetts Comm'n Against Discrimination*, 445 Mass. 96, 106 (2005); *Dahill* v. *Police Dep't of Boston*, 434 Mass. at 239-240. However, the guidelines are not formal regulations duly promulgated pursuant to G. L. c. 151B, § 3 (5). See G. L. c. 30A, § 2. Accordingly, they do not set "requirement[s] of general application and future effect," G. L. c. 30A, § 1, that carry the force of law. Contrast *Solomon* v. *School Comm. of Boston*, 395 Mass. 12, 16 (1985). Contrast also *Ocean Spray Cranberries, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 441 Mass. 632, 641-642 (2004). As a result, the MCAD Guidelines cannot create and impose on employers an affirmative notice obligation

that the MMLA itself does not mention. Cf. *Water Dep't of Fairhaven* v. *Department of Envtl. Protection*, 455 Mass. 740, 749 (2010).[4]

In this case, the motion judge stated that the trial judge in the Stephens litigation had been correct in "pointing to the MCAD guideline[s]." In effect, the motion judge was agreeing with the trial judge that the MCAD Guidelines imposed on Global an affirmative obligation to notify Stephens that she would not be entitled to full MMLA benefits (including the return to her job) if she took the ten weeks of maternity leave that Global offered, rather than the statutory eight — with the direct consequence of

---

[4]The notice requirement in the interpretive guidelines of the Massachusetts Commission Against Discrimination (MCAD) ("If the employer does not intend for full MMLA rights to apply to the period beyond eight weeks, however, it must clearly so inform the employee in writing prior to the commencement of the leave") appears to be designed to harmonize the two separate provisions in the first and third paragraphs of the MMLA that I have discussed in part 1, *supra*. The policy embedded in the guidelines does not obligate an employer to increase the amount of time to which MMLA rights apply, nor does it impose any automatic, preset penalty if the employer does not provide the prescribed notice. Contrast *Ragsdale* v. *Wolverine World Wide, Inc.*, 535 U.S. 81, 88-89, 90-91 (2002) (Federal regulation implementing Family and Medical Leave Act [FMLA], and requiring employers who fail to provide notice that employer-provided leave counts against FMLA entitlement to grant employees twelve additional weeks of FMLA leave, regardless of prejudice to employee, held invalid because it altered FMLA's remedial structure by removing requirement that employee prove impairment of rights and prejudice). By directing employers who may provide maternity leave that exceeds eight weeks to notify their employees that the MMLA rights will end at the eight-week mark, the MCAD policy has reciprocal benefits for employees and employers: it protects employees from losing their MMLA rights through uninformed reliance on an employer's offer of a maternity leave longer than eight weeks; and it provides employers who give the notice a safe harbor against employee claims of MMLA violation where the employee does not return to work at the end of eight weeks. While the MCAD cannot establish such a notice requirement by adopting guidelines, it may well have the authority to do so through a duly promulgated regulation, and I do not understand the court to hold otherwise. See *Water Dep't of Fairhaven* v. *Department of Envtl. Protection*, 455 Mass. 740, 749-751 (2010) (discussing authority of Department of Environmental Protection to adopt, by regulation, mandatory conservation measures as "registration conditions" on cities and towns and to create adjudicatory proceeding for registrants, although department lacked power to do either without enacting regulations). This court has recognized the broad power granted by G. L. c. 151B, § 3 (5), to the MCAD to adopt regulations designed to carry out the provisions of c. 151B. See, e.g., *Ocean Spray Cranberries, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 441 Mass. 632, 641-642 (2004).

being liable in damages for violation of the MMLA if the notice was not provided.[5] Because the MCAD Guidelines cannot bear the weight that the judges below placed on them, the motion judge's allowance of the attorneys' motions for summary judgment was in error.

4. That the attorneys were not entitled to summary judgment in this case does not necessarily mean that Global's motion for partial summary judgment should have been granted. I agree with the court that the record establishes the attorneys' negligence in failing to file a timely notice of appeal. I do not agree, however, that Global has proved the attorneys' negligence was a proximate cause of its loss as matter of law. *Ante* at 501. The complaint in the Stephens litigation sets out a claim for violation of the MMLA itself and does not mention the MCAD Guidelines. The trial transcripts from that litigation that are included in the record before us reflect a significant amount of evidence supporting a claim that Global had violated the MMLA in precisely the manner I have described above. In the circumstances, had Global been able to pursue its appeal, the Appeals Court could have decided to reverse the judgment because of the erroneous jury instructions based on the MCAD Guidelines, but to remand the case to the Superior Court for a new trial with proper instructions. In that event, to prevail in its malpractice case against the attorneys, Global would be required to establish that it would have prevailed in such a retrial. See 4 R.E. Mallen & J.M. Smith, Legal Malpractice § 31:52, at 748, 756-757 (2010) ("Initially, the client must prove that, but for the attorney's negligence,

---

[5]That this was the trial judge's position is made crystal clear from his instructions to the jury. The judge told the jury that Stephens's claim was that Global had violated the MMLA, and that violations of the MMLA are "deemed unfair employment practices in violation of the prohibition on gender discrimination in accordance with [G. L. c. 151B]." He then explained the provisions of the MMLA, stating, in relevant part, "An employer may grant a longer maternity leave than required under the [MMLA], however, if the employer does not intend to give the employee full [MMLA] rights at the end of a leave longer than eight weeks, the employer must clearly so inform the employee in writing prior to the beginning of the leave." The instruction did not mention the MCAD Guidelines but, as the portion just quoted reflects, directly incorporated the notice requirement contained in the guidelines into the MMLA itself, making them an integral part of the statute that Stephens claimed Global had violated. The trial judge reiterated the same view in his decision on Global's motion for judgment notwithstanding the verdict.

[the client] should have prevailed on the . . . appeal"; "[i]f the appeal should have been successful, the [client] must next prove there should have been a better result. . . . If a retrial is the result of appellate review, then the client must next persuade the trier of fact that the client should have done better at the new trial"). The parties have not addressed these issues in the present appeal, and it may be that the record presently before the court is not sufficient to do so. I would reverse the judgment of the Superior Court and remand for further proceedings.