Kenton-Walker, Janet, J.
INTRODUCTION
The plaintiff, Lester Mietkiewicz (Mietkiewicz), is the executor of the estate of his aunt, Sophie DiPillo (DiPillo). Mietkiewicz brings this action against the defendants, James M. Galliher (Attorney Galliher), Edwin H. Howard (Attorney Howard), Brian F. Donovan (Attorney Donovan), and Bonville & Howard, Attorneys at Law, alleging that the defendants were negligent in drafting a health care proxy for his incompetent aunt which appointed her grandnephew, Yared Weaver (Weaver) as proxy. Under authority of this proxy, Weaver consented to a back surgery on behalf of DiPillo, which the plaintiff alleges caused DiPillo’s death. The complaint seeks wrongful death damages as well as attorneys fees incurred in probate court to invalidate the health care proxy. The defendants now move for partial summary judgment on the wrongful death claim, alleging that the plaintiff will be unable to establish causation as a matter of law because there is no evidence that the defendants’ alleged negligence was the cause in fact or the proximate cause of DiPillo’s death. Also before the court is the Plaintiffs Motion to Strike Summary Judgment Exhibits BBB and CCC and All References Thereto in the “Consolidated Statement of Facts” and “Consolidated Exhibit List.” For the reasons that follow, the defendants’ motion for partial summary judgment is DENIED, and plaintiffs motion to strike is DENIED.
BACKGROUND
The followed facts are the undisputed facts contained in the summary judgment record, viewed in the light most favorable to the non-moving party.
Since at least March 2006, DiPillo suffered from dementia, Alzheimer’s disease, and brain atrophy. In 2007, Weaver became a full-time caregiver for DiPillo, his great-aunt, after she was discharged from Keystone Nursing Home. Weaver lived with DiPillo in DiPillo’s apartment. Mietkiewicz, DiPillo’s nephew, held a power of attorney for DiPillo at the time. DiPillo consented to Weaver’s caregiver status. In 2007, while DiPillo was a resident at Keystone, she nominated Weaver her health care proxy. The parties dispute whether this proxy nomination was ineffectual due to incapacity.
On March 5, 2008, DiPillo and Weaver met with Dr. Frederik Pennings (Dr. Pennings) to discuss treatment options for DiPillo’s ongoing back pain. Upon examination, Dr. Pennings concluded that DiPillo was suffering a vertebral compression fracture. On March 23, 2008, DiPillo and Weaver met with Dr. Pennings again. After this visit, Dr. Pennings scheduled a back operation for April 17, 2008, believing there to be an 80% chance of pain relief. Dr. Pennings testified at his deposition that despite her dementia, DiPillo independently expressed that she was in pain and desired the operation.
*664 On March 28, 2008, DiPillo and Weaver met with Attorney Donovan at Bonville & Howard’s office to discuss the preparation of a revised will, power of attorney, and health care proxy for DiPillo. After the meeting, Attorney Donovan informed Attorney Howard that he was uncomfortable executing the documents. On April 4, 2008, DiPillo and Weaver met with Attorney Galliher, another attorney at Bonville & Howard, and executed the documents. The documents appointed Weaver health care proxy, holder of power of attorney, and made him DiPillo’s sole beneficiary.[3] A will executed by DiPillo in 2004 granted Weaver all of DiPillo’s household furnishings and a 25% residual interest in the estate. During the meeting with Attorney Galliher, DiPillo was unable to recall her age, address, date of birth, relationship to Weaver, who Weaver’s parents were, or that Weaver lived with her.
At the time that Galliher drafted the documents for DiPillo, Bonville & Howard also represented Weaver in bankruptcy proceedings. The defendants did not disclose this fact to DiPillo. Prior to their representation of DiPillo, the defendants had represented Health Alliance Hospitals, Inc. in a collection action that Health Alliance brought against DiPillo. The defendants did not disclose or obtain consent to this potential conflict of interest.
On April 17, 2008, Dr. Pennings operated on DiPillo as scheduled at UMass Memorial Medical Center. Dr. Pennings relied upon Weaver’s consent in going forward with the procedure. Dr. Pennings’s operation report states that no complications occurred during the surgery. Following the operation, on April 22, 2008, DiPillo was released into Weaver’s care. The next day DiPillo was admitted to Leominster Hospital because of mental status changes. During the next seven months, DiPillo rotated in and out of a number of hospitals and nursing homes, and briefly lived with her niece, Andrea Mietkiewicz. During this time, DiP-illo received psychiatric assessment and treatment, and was in declining health. On November 29, 2008, DiPillo passed away at Westgate Manor, a nursing home in Maine. The death record lists the cause of death as “multisystem failure.”
On June 16, 2008, a trial occurred in the Worcester Probate and Family court concerning temporary guardianship of DiPillo. On November 20, 2008, just prior to DiPillo’s death, the judge issued findings of fact and conclusions of law in the guardianship case. The judge found that on April 4, 2008, DiPillo did not have the requisite capacity to assent to the health care proxy and durable power of attorney that the defendants drafted on her behalf. The judge concluded that Weaver was not a suitable temporary guardian of DiPillo, and appointed Mietkiewicz and Andrea Mietkiewicz as DiPillo’s co-guardians. Thereafter, on December 17, 2009, the same judge denied probate of the 2008 will drafted by the defendants, finding that DiPillo lacked testamentary capacity. The Appeals Court affirmed the judge’s ruling in a Rule 1:28 decision.[4]
In Mietkiewicz’ affidavit, he testifies that he would not have consented to the surgery on DiPillo because the risks of surgery outweighed the benefits given her age and condition. Mietkiewicz is a physician that specializes in geriatric medicine. Mietkiewicz testifies in his affidavit and his deposition that in his professional opinion, DiPillo’s life was shortened by two to three years. The defendants included opinion letters from doctors James Ellison and Lloyd Price in the summary judgment appendix of exhibits (exhibits BBB and CCC). These letters opine that DiPillo’s back surgery did not cause her death. These exhibits are the subject of the plaintiffs motion to strike.
DISCUSSION
The defendants’ motion for summary judgment and the plaintiffs motion to strike are before the court.
I. Summary Judgment Standard
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). A party seeking summary judgment may satisfy its burden of demonstrating the absence of triable issues either by submitting affirmative evidence demonstrating entitlement to relief, or the opposing party’s lack of entitlement, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of their case. Flesner v. Tech. Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis, 410 Mass, at 716. Once the moving party establishes the absence of a triable issue, the nonmoving party must respond by setting forth specific facts showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(e); Kourouvacilis, 410 Mass, at 716. A party cannot defeat a motion for summary judgment by resting on his or her pleadings and making mere assertions of disputed facts. Lalonde v. Eissner, 405 Mass. 207, 209 (1989).
II. Analysis
To establish legal malpractice a plaintiff must establish: (1) the existence of an attorney-client relationship; (2) a duty to exercise a reasonable care in the performance of the attorney’s legal duties; (3) a violation of this duly; and (4) reasonably foreseeable harm was caused by the attorney’s negligence. Correia, v. Fagan, 452 Mass. 120, 127 (2008).
For purposes of this motion, the defendants do not dispute that DiPillo was their client, whom they owed a duty of reasonable care. In the context of the defendants’ representation of DiPillo, the standard of care required the defendants “to be reasonably alert to indications that the client is incompetent or is subject to undue influence and, where indicated, to make reasonable inquiry and a reasonable determination in that regard.” Logotheti v. Gordon, 414 Mass. *665 308, 311 (1993). The defendants agree that whether they breached the applicable standard of care remains a disputed fact. Instead, the defendants argue that they are entitled to summary judgment on the plaintiffs wrongful death claims because their alleged legal malpractice was neither the proximate cause nor the cause in fact of DiPillo’s death. The defendants first raised this question of law, whether wrongful death damages may lie in a legal malpractice case, in a motion to dismiss. Acknowledging that the parties presented a novel question of law, the court (Wilkins, J.) denied the motion to dismiss, stating:
the complaint plausibly suggests entitlement to such relief if plaintiff shows that consent to the operation would not have been given if the defendants had not been negligent and that therefore the death from the operation without lawful consent was a foreseeable consequence of the alleged negligence. At a minimum, the issue should be decided on a more complete record and not on the pleadings.
With a more complete record now before the court, the question remains a close one.
Causation is normally a question of fact for the jury, however, in an appropriate case, the court may resolve the issue as a matter of law at the summary judgment stage. Global NAPs, Inc. v. Awiszus, 457 Mass. 489, 500 (2010). First, the court will address the defendants’ argument that there is insufficient evidence in the record to establish “but for” causation. But for causation, also referred to as causation in fact, asks whether the event would have occurred without the defendant’s negligence. See 1 R.E. Mallen & J.M. Smith, Legal Malpractice §8:5, at 974 (2013). The defendants argue that the plaintiff will be unable to establish causation in fact because the plaintiff has no reasonable likelihood of proving that DiPillo died as a result of the back surgery. The court disagrees. There is evidence in the record that could establish that if the defendants did not draft DiPillo’s health care proxy, she would not have had the back surgery. Furthermore, Mietkiewicz’s affidavit is sufficient to create a genuine issue of material fact as to whether DiPillo’s back surgery caused her death. While Mietkiewicz’s expert opinion that DiPillo’s back surgery accelerated her death may be suspect to additional scrutiny by a factfinder due to his stake in the litigation and his status as a percipient witness, the opinion is nonetheless sufficient to create a triable issue as to causation in fact.[5]
The more difficult question is whether there is a proximate causal link between the defendants’ alleged negligence and DiPillo’s death. The defendants argue that DiPillo’s death was outside the scope of reasonable foreseeability. Neither side identifies any case directly on point, and the court is unaware of any.
Therefore the court will apply the following general principles of proximate causation. “One is bound to anticipate and provide against what usually happens and what is likely to happen, but is not bound in like manner to guard against what is unusual and unlikely to happen, or what ... is only remotely and slightly probable.” Falk v. Finkelman, 268 Mass. 524, 527 (1929). Put differently, the general character and probability of the injury must be foreseeable, and must not be a highly extraordinary consequence of the defendant’s negligence. See Hebert v. Enos, 60 Mass.App.Ct. 817, 821-22 (2004). In determining the outer boundaries of liability, the court is also guided by considerations of policy and pragmatic judgment. See Poskus v. Lombardo’s of Randolph, Inc., 423 Mass. 637, 640 (1996).
The court agrees that generally, holding a lawyer liable for the wrongful death of a client is a highly extraordinary result that is not foreseeable. However, given the unusual facts of this case, the plaintiffs claim must be resolved by a factfinder.
The Massachusetts Health Care Proxy Statute requires proxies to malee health care decisions, “(i) in accordance with the agent’s assessment of the principal’s wishes, including the principal’s religious and moral beliefs, or (ii) if the principal’s wishes are unknown, in accordance with the agent’s assessment of the principal’s best interests.” G.L.c. 210D, §5. A proxy holder is unsuitable where there are conflicts of interest that may interfere with the proxyholder’s obligations. See Curran v. Carrol, 318 Mass. 780, 780 (1945).
Here a juiy could find that it was a foreseeable consequence of the defendants’ negligence that Weaver would assent to a back surgery that is inconsistent with DiPillo’s wishes or best interests, and that the surgery would subject DiPillo to additional pain and risk of death. The facts viewed in the light most favorably to the plaintiff are that at the time Bonville & Howard drafted the documents for DiPillo, it was contemporaneously representing Weaver in personal bankruptcy proceedings, and thus, was aware that Weaver was in a dire financial position. The defendants were aware that they were altering DiPillo’s will to make Weaver DiPillo’s primary beneficiary. DiPillo was showing obvious signs of incapacity at the time of her meetings with attorney. From these facts, a reasonable jury could conclude that it was foreseeable to the defendants that Weaver had bad faith intentions and conflicts of interest that would make him incapable of fulfilling the obligations required by the Health Care Proxy Statute. It is likewise foreseeable that a physician would rely on Weaver’s proxy decision because the Health Care Proxy Statute encourages reliance by physicians. See G.L.c. 210D, §8 (exempting health care providers from civil and criminal liability, and professional misconduct for carrying out in good faith a health care decision made by a proxy).
An examination of the factors detailed above supports the conclusion of proximate causation. An ordi- *666 naiy consequence of an attorney drafting a health care proxy for an individual that is incapable of consenting is that the wrongfully appointed proxy will make a decision inconsistent with the incapacitated principal’s wishes or best interests. That is precisely what is alleged here. The law recognizes this risk, and allows any interested person to petition the probate and family court for a determination of incapacity. See Guardianship ofZaltman, 65 Mass.App.Ct. 678, 679 n.2 (2006); see also G.L.c. 190B, §5-303(a) (effective July 1, 2009). Furthermore, holding a lawyer liable under these alleged facts would not be repugnant to social policy. An attorney is in a unique position to judge the capacity of proxy signatories and intentions of the individual seeking proxy status, and thus, it is appropriate to require the attorney to guard against an individual seeking proxy status in bad faith or with an obvious conflict of interest. In sum, the defendants could have reasonably foreseen that their actions would lead to DiPillo undergoing a surgeiy not in accordance with her wishes, and therefore, there is a genuine issue of material fact as to proximate causation.
ORDER
The defendants’ Motion for Partial Summary Judgment (paper #19) is DENIED for the foregoing reasons. The plaintiffs motion to strike (#20) is DENIED.

Except Mietkiewicz was to receive any of DiPillo’s household furnishing that Weaver did not desire.

 81 Mass.App.Ct. 1116, 2012 WL 592849.

The defendants seek to refute Mietkiewicz’s affidavit with two expert reports of their own, which are exhibits BBB and CCC. The plaintiffs motion to strike focuses on these two reports that the defendants inserted into the summary judgment record in response to the plaintiffs statement of additional undisputed facts, which relied on Mietkiewicz’s affidavit. The plaintiffs were unaware that the defendants retained these experts until they examined the defendants’ Rule 9(a) submission to the court. The plaintiff argues that the court should strike these reports because the plaintiff did not have the opportunity to review the reports or depose the experts. The court will deny the plaintiffs motion to strike because the defendants were within their right to file these affidavits in response to the plaintiffs statement of additional facts. See Superior Court Rule 9(b)(5)(iv). Nonetheless, these affidavits are of no consequence in the court’s partial summary judgment ruling, as Mietkiewicz’s affidavit is sufficient to create a triable issue as to medical cause of death, irrespective of the defendant’s expert reports.