PAULINE D. CORMIER, executrix,[1] vs. PEZROW NEW
ENGLAND, INC.

Hampden. November 5, 2001. - July 15, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Civil,* Motion to dismiss, Venue, Judgment notwithstanding verdict,
Directed verdict. *Anti-Discrimination Law,* Age, Damages. *Employment,*
Termination. *Damages,* Punitive.

This court concluded that a claim of age discrimination in employment could
be brought in more than one venue and that, even if venue was improper
in one county, transfer rather than dismissal would be the proper remedy;
where the trial had occurred, and the defendant had made no showing of
unfairness or prejudice by litigating in one county rather than another, any
error in failing to transfer the case did not warrant reversal. [304-308]
In an age discrimination in employment case in which the jury returned a
verdict in favor of the employee, motions for a directed verdict and for
judgment notwithstanding the verdict were properly denied, where there
was ample, albeit contested, evidence at trial to warrant the jury's finding
that the employee was terminated due to his age, which reflected a conclu-
sion that the proffered reasons for termination were false. [308-309]
An award of double damages in an age discrimination in employment case
was error, where the judge's finding that the defendant had "reason to
know" that the termination of the plaintiff was in violation of the provi-
sions of G. L. c. 151B, § 4, was not properly based on evidence of
knowledge or reckless indifference to the rights of others, but rather was
inadequately based on the educational background and general experience
of the manager who terminated the plaintiff. [309-310]

CIVIL ACTION commenced in the Superior Court Department on
December 6, 1994.

A motion to dismiss was heard by *Francis X. Spina,* J., and
the case was tried before *Judd J. Carhart,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Joseph F. Ryan* for the defendant.

---

[1]Of the estate of Kenneth J. Cormier. A suggestion of death was filed in the
Appeals Court on January 19, 2001. We shall refer to Cormier as the plaintiff.

*Robert C. Sacco* for the plaintiff.

CORDY, J. Kenneth J. Cormier filed a complaint in the Superior Court for Hampden County, against his former employer, Pezrow New England, Inc. (Pezrow), alleging that his employment as a sales representative had been unlawfully terminated after twenty-five years because of his age, in violation of G. L. c. 151B, § 4 (1B). A jury returned a verdict in favor of Cormier, and assessed damages in the amount of $209,500. The trial judge ruled that Pezrow's violation of G. L. c. 151B was "willful" and doubled the award of damages pursuant to G. L. c. 151B, § 9.

Before trial, Pezrow filed a motion to dismiss based on improper venue; during trial, it filed motions for a directed verdict after the close of Cormier's evidence and again at the close of all the evidence; and after trial, it filed a motion for judgment notwithstanding the verdict. All of these motions were denied. Judgment entered in favor of Cormier. Pezrow appealed from the denial of its motions and the doubling of the damage award.

The Appeals Court vacated the judgment for Cormier, ruling that Pezrow's motion to dismiss and motions for a directed verdict based on improper venue should have been allowed. *Cormier* v. *Pezrow New England, Inc.*, 51 Mass. App. Ct. 69 (2001). The court reasoned that although Cormier was employed by a Massachusetts company and was assigned to manage the accounts of customers located almost exclusively in Hampden County, he actually "worked [at the Pezrow office] in Enfield, Connecticut" (Connecticut), and therefore his discharge "did not occur in Hampden County." Consequently, the special venue requirement of G. L. c. 151B that an action for age discrimination be brought in the county in which the "unlawful practice occurred" had not been satisfied. We granted Cormier's application for further appellate review.

We conclude that a claim of age discrimination may be brought in more than one venue, and even if venue was improper in Hampden County, transfer, not dismissal, would have been the proper remedy. In the absence of a showing of unfairness or prejudice from having to litigate the case in Hampden County, the judgment should not be vacated. We also decide

the issues raised in Pezrow's appeal that the Appeals Court did not reach because of its ruling on the question of venue. We affirm the trial judge's denial of the motions for directed verdict and verdict notwithstanding the verdict, but vacate the award of double damages.

1. *Factual Background.*

Pezrow is a Massachusetts corporation headquartered in Westwood, which is located in Norfolk County. It is engaged in the food brokerage business. Cormier was a resident of Chicopee, which is located in Hampden County. He had been employed since 1969 by Pezrow and its predecessor corporations,[2] as a sales representative managing the accounts of supermarkets located almost exclusively in Hampden County.

Until October, 1993, when Chase-Kolbrin merged with Pezrow, Cormier worked out of his home in Chicopee. After the merger, Cormier's files were transferred from his home to Pezrow's office in Connecticut. Cormier was also assigned a desk in Connecticut where he spent, on average, one day per week performing routine business activities. He continued to work with accounts in Hampden County, where he spent the majority of his time.[3] Corporate officials who worked at Pezrow's headquarters in Westwood made the decision to terminate Cormier in the spring of 1994. Cormier received his termination notice on April 15, 1994, while he was working at his desk in Pezrow's Connecticut office.

2. *Discussion.*

a. *Venue.* One of the principal purposes of G. L. c. 151B is to "protect the citizens of the Commonwealth against employment discrimination," *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 583 (1994), and its provisions are to be "construed liberally for the accomplishment" of that purpose. G. L. c. 151B, § 9. See *Dahill* v. *Police Dep't of Boston*, 434 Mass. 233, 240 (2001). The statute contains a special venue provision directing that ac-

---

[2]Pezrow New England, Inc., is the successor corporation to Chase-Kolbin Associates, with which it merged in October, 1993. Chase-Kolbin in turn was the successor corporation to Kelly, Chase, Austin, which originally hired Cormier as a sales representative in 1969.

[3]Beginning in October, 1993, Cormier also began to spend, on average, one day each week at Pezrow's headquarters in Westwood.

tions for discrimination are to be brought "in the superior or probate court for the county in which the alleged unlawful practice occurred." G. L. c. 151B, § 9. We have not had occasion to interpret the words "in which the alleged unlawful practice occurred," in the context of determining where an action for age discrimination may properly be brought.

We begin by noting that there is no question of jurisdiction raised in this case. Nor is there any doubt that Massachusetts courts have the power to decide an employment discrimination controversy between a Massachusetts citizen and a Massachusetts employer whose headquarters is located in Massachusetts. The question is one of venue, a matter that has "procedural implications totally distinct from jurisdiction," commonly having to do with geographical subdivisions, and in no way affecting the inherent authority of the court. *Markelson* v. *Director of the Div. of Employment Sec.*, 383 Mass. 516, 518 (1981). *Paige* v. *Sinclair*, 237 Mass. 482, 483-484 (1921). When jurisdiction exists, venue requirements should be read liberally to ensure access to the Commonwealth's courts, for "[i]t cannot be presumed that the Legislature, when undertaking to confer jurisdiction upon our courts . . . could have intended in many conceivable instances to deprive the holder of [such] claims of all opportunity to bring an action." *Potter* v. *LaPointe Mach. Tool Co.*, 201 Mass. 557, 563 (1909).

The motion judge denied Pezrow's motion to dismiss based on his conclusion that the "core of the employment relationship" existed in Hampden County, and therefore "the unlawful act of discrimination, the actual severance of the employment relationship between [Cormier] and Pezrow, occurred in Hampden County, where the relationship was based." Pezrow contended at trial and on appeal that any unlawful act occurred only when Cormier received notice of his termination in the company's Connecticut office; accordingly, Connecticut was where the unlawful act occurred, and venue was not proper in Hampden County.

The Appeals Court first rejected Pezrow's argument by explaining, "the place where the employee is notified of his discharge does not necessarily establish the place where the alleged unlawful discharge occurred. To hold otherwise would al-

low employers to circumvent G. L. c. 151B by simply notifying employees of their discharge when they are not in the Commonwealth." *Cormier* v. *Pezrow New England, Inc.*, 51 Mass. App. Ct. 69, 73 (2001). However, it went on to conclude that because Cormier's desk and files were located in Connecticut, he "worked" there, and therefore the discharge did not occur in Hampden County. The clear implication of the court's conclusion is that Connecticut was indeed the place "in which the alleged unlawful practice occurred."

We do not read G. L. c. 151B so narrowly as to mean that conduct constituting an unlawful termination can occur in only one place, and, consequently, that there is only one venue in which an employment discrimination claim may be brought. Such a confining interpretation would be inconsistent with the realities of today's employment world. An unlawful employment practice may consist of many actions and decisions made far from where the employee is physically located, between company officials who themselves are separated by great distances, and may be implemented in one of many jurisdictions. Limiting an employee to a single venue in which to bring a discrimination action when an unlawful decision and its implementation may have occurred in many places would be inconsistent with our mandate to construe liberally the statute to protect Massachusetts employees from workplace discrimination.[4]

At the very least, the unlawful practice here occurred in Con-

---

[4]Federal employment discrimination actions under Title VII of the Civil Rights Act of 1964 may be brought in several different forums, one of which is in "any judicial district in the State in which the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e-5(f)(3) (1994). In interpreting this language, Federal courts have been reluctant to conclude that an "unlawful employment practice" occurs in only one place. See, e.g., *Passantino* v. *Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 505 (2000) ("Venue is proper in both the forum where the decision is made and the forum in which that decision is implemented"); *McDonald* v. *American Fed'n of Musicians of the U.S. & Can.*, 308 F. Supp. 664, 669-670 (N.D. Ill. 1970) (fact that unlawful decision was made in another jurisdiction "does not necessitate the conclusion that no alleged act of discrimination occurred" in district where plaintiffs worked and decision was implemented); *Cox* vs. *National Football League*, U.S. Dist. Ct. No. 97C3741 (N.D. Ill. Sept. 29, 1997) (acts of discrimination occur both "where the decision and actions concerning the employment practices occurred").

necticut, where Cormier was assigned an office and received notice of his termination, and in Westwood (Norfolk County), where the decision was made. We also agree with the motion judge that an unlawful employment practice may occur where "the core of the employment relationship" lies. Whether that was in Hampden County, however, is a closer question. Although Cormier spent most of his time working with customers in Hampden County, and had for many years worked from his home in Chicopee (Hampden County), after the merger he was relocated to the company's Connecticut office. In addition, Pezrow had no physical presence in Hampden County, and the decision to terminate was not made, communicated, or arguably implemented there.

In the circumstances of this case, however, we do not need to decide whether the motion judge was correct in concluding that the "core of the employment relationship" was in Hampden County. The remedy for improper venue is not necessarily dismissal of the action when venue may be properly found in another court of the Commonwealth. *Markelson* v. *Director of the Div. of Employment Sec., supra* at 519 ("dismissal [for improper venue] is not required as a matter of law"). Venue was clearly proper in Norfolk County, where it is undisputed that the unlawful decision to terminate Cormier was made. Cormier filed a motion to transfer the case to Norfolk County in addition to opposing Pezrow's motion to dismiss on venue grounds. If the motion judge had found that venue was not proper in Hampden County, there would have been no basis on which to dismiss the case as a matter of discretion, and he would have been constrained to allow Cormier's motion to transfer it to Norfolk County. *Id.*[5] Consequently, even if Pezrow had prevailed in its argument, it would have been entitled only to such a transfer. Where the trial has occurred, and Pezrow has made no showing of unfairness or prejudice by litigating the

---

[5]See G. L. c. 223, § 15 ("If an error in venue is discovered at any stage of the proceedings of a civil action in the . . . superior court, the court may, upon motion of either party, order the action, with all papers relating thereto, to be removed to the proper county . . . and it shall thereupon be entered and prosecuted in the same court for that county as if it had been originally commenced therein, and all prior proceedings otherwise regularly taken shall be valid").

case in Hampden County, rather than Norfolk County, any error in failing to transfer it does not warrant reversal.

b. *Motions for a directed verdict and for judgment notwithstanding the verdict.* In reviewing the denials of the motions for directed verdict and for judgment notwithstanding the verdict, "the standard is 'whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff". . . . In applying this standard, we examine the evidence in the light most favorable to the plaintiff.' " *Martignetti* v. *Haigh-Farr, Inc.,* 425 Mass. 294, 304 (1997), quoting *Forlano* v. *Hughes,* 393 Mass. 502, 504 (1984). Pezrow argues that (1) Cormier failed to present sufficient evidence to support a finding that he was performing his job at an acceptable level, which is required to establish a prima facie case of discrimination in the first of the three stages of proof set forth in *Blare* v. *Husky Injection Molding Sys. Boston, Inc.,* 419 Mass. 437, 441 (1995); (2) Cormier failed to present sufficient evidence to support a finding that Pezrow's proffered reason for his discharge was a pretext under the third stage of proof; and (3) that uncontroverted evidence establishes that Pezrow's reason for discharging Cormier was not a pretext. Pezrow's arguments fail because they are premised on a view of the evidence favorable to it rather than to Cormier.

In many respects, the trial boiled down to a credibility contest between Cormier and his direct supervisor (Harvey Goldberg) on one side, and Pezrow's management personnel (Gerald Capaldi and Eugene Mahoney) on the other.[6] The verdict reflects that the jury believed Cormier's version of events over Pezrow's version. Viewing the evidence in the light most favorable to Cormier, the jury could have found that he was a twenty-five year employee of Pezrow and Chase-Kolbin with no prior negative performance evaluations; he was terminated at the age of sixty; and at the time of termination, he was the oldest sales representative in his department. The jury also could have found that Pezrow's claim that it laid off a total of fifty people between the time of the merger and December, 1994 (compared to the

---

[6]Gerald Capaldi and Eugene Mahoney worked at Pezrow's corporate headquarters in Westwood.

twenty-five contended by Cormier), was not true; that Pezrow's claim that Cormier's layoff (among others) was necessitated by the loss of $500,000 in annual revenue from one account was not credible in light of evidence that that account was replaced with a new $1 million account; and that Pezrow's claim at trial that Cormier was also terminated for performance issues was inconsistent with its earlier position that the termination was due to staff reductions and the elimination of his position.

In sum, the jury's answer of "yes" to the question whether they found Cormier was terminated due to his age, reflected a conclusion that the proffered reasons for termination were false and that the termination was due to age discrimination. There was ample, albeit contested, evidence at trial on which such a conclusion could be based.

c. *The award of double damages.* Pursuant to G. L. c. 151B, § 9, a judge may award double damages if he finds "that the discriminatory act or practice complained of was committed with knowledge, or reason to know, that the act or practice at issue violated the provisions of G. L. c. 151B, § 4, which prohibits . . . age discrimination." *Brownlie* v. *Kanzaki Specialty Papers, Inc.*, 44 Mass. App. Ct. 408, 420 (1998). Here, the judge found that Pezrow, through its vice-president, Gerald Capaldi (who took part in making the decision to discharge Cormier and in notifying him of it), had reason to know that Cormier's discharge violated G. L. c. 151B: "Capaldi made the decision to terminate the plaintiff. Capaldi has a Master's degree in business administration and is an executive in the defendant food company. I find that his decision to terminate the plaintiff was in complete disregard of the provisions of G. L. [c.] 151B. I find that the defendant had reason to know that the termination of the plaintiff was in violation of the provisions of" G. L. c. 151B, § 4.

Cormier concedes that there was no evidence at trial that Pezrow had actual knowledge that its action violated Massachusetts law, but argues that the judge's finding that Pezrow "had reason to know" is supported by the record, including evidence that Capaldi was well educated and had been with Pezrow for fifteen years; that Pezrow maintained a human resources staff to which managers could turn for advice; that it

was policy to report any termination to human resources before it was carried out; and that "[a]ny manager in today's business environment with that level of responsibility, experience and education and with access to those resources, knows or should know that it is illegal to terminate an employee based on their age." Cormier further argues that Capaldi was evasive at trial; that he knew that Cormier was sixty years old and the oldest sales representative; and that the person who replaced Cormier was younger (although still in the protected age group). Thus, "Capaldi knew that his termination of Cormier was age discrimination."

We conclude, however, that the award of double damages was erroneous. "[M]ultiple damages are 'essentially punitive in nature.' " *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 322 (1993), quoting *McEvoy Travel Bur., Inc.* v. *Norton Co.*, 408 Mass. 704, 717 (1990) (age discrimination). In determining whether there is sufficient evidence that Capaldi "had reason to know" that his conduct was illegal, the court is guided by the punitive nature of multiple damages, which are "awarded for conduct that is 'outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.' " *Goodrow* v. *Lane Bryant, Inc.*, 432 Mass. 165, 178 (2000), quoting *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 17a (1998) (failure to pay overtime compensation in violation of G. L. c. 151, § 1A). The evidence to support the multiple damages claim was that Capaldi had a master's degree and fifteen years of management experience in a large company with a human resources department. There was no evidence that discrimination law had been discussed in connection with Cormier's discharge, see *Brownlie* v. *Kanzaki Specialty Papers, Inc.*, *supra*, or that the company had a policy against age discrimination of which managers were notified, see *Koster* v. *Trans World Airlines, Inc.*, 181 F.3d 24, 37 (1st Cir.), cert. denied, 528 U.S. 1021 (1999).

Holding that "reason to know" existed in this case would award punitive damages on the basis of Capaldi's status and not on evidence of knowledge or reckless indifference to the rights of others. *Goodrow* v. *Lane Bryant, Inc., supra.* In light of the

severity of punitive damages, and their goal of deterring intentional conduct, a manager's education and general experience alone is not an adequate basis for such an award.

d. *Propriety of the jury instructions.* Pezrow for the first time argues that the judge's instructions to the jury concerning pretext were erroneous because he failed to instruct the jury that Cormier was required to prove discriminatory animus and causation. *Lipchitz* v. *Raytheon Co.,* 434 Mass. 493, 501-504 (2001). Pezrow has waived this issue because it failed to object to the instructions at trial. See Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974). See also *Rotkiewicz* v. *Sadowsky,* 431 Mass. 748, 751 (2000); *Flood* v. *Southland Corp.,* 416 Mass. 62, 66-68 (1993).

3. *Conclusion.*

The denials of the motions for a directed verdict and judgment notwithstanding the verdict are affirmed. The judgment of the Superior Court is affirmed in part and vacated in part. The case is remanded to the Superior Court where an amended judgment will enter reducing the double damages consistent with this opinion.

*So ordered.*