## RUSSELL DOW *vs.* GREGORY CASALE.

No. 12-P-687.

Suffolk. November 8, 2012. - June 19, 2013.

Present: COHEN, KATZMANN, & WOLOHOJIAN, JJ.

*Massachusetts Wage Act. Labor,* Wages.

In a civil action pursuant to the Massachusetts Wage Act, G. L. c. 149, §§ 148, 150, brought against the chief executive officer of a corporation with its sole place of business in Massachusetts, seeking unpaid sales commissions, certain unreimbursed expenses, wages in lieu of accrued vacation time, treble damages, and attorney's fees, the judge properly granted summary judgment in favor of the plaintiff, a Florida resident who, as a director of sales for the corporation, did not primarily perform the duties of his employment within the borders of the Commonwealth, where Massachusetts had, by far, the most significant relationship not only to the corporation and its chief executive officer as citizens of the Commonwealth, but also to the plaintiff's employment relationship with them, and therefore, the application of the Wage Act was not an impermissible extraterritorial assertion of the Commonwealth's authority. [754-758]

CIVIL ACTION commenced in the Superior Court Department on April 1, 2010.

The case was heard by *Peter M. Lauriat,* J., on motions for summary judgment.

*W. Paul Needham (Mark A. Johnson* with him) for the defendant.

*Elise Busny (Margaret M. Pinkham* with her) for the plaintiff.

COHEN, J. In this action pursuant to the Massachusetts Wage Act, G. L. c. 149, §§ 148,[1] 150[2] (Wage Act), Florida resident Russell Dow, an employee of Starbak, Inc.,[3] a corporation

---

[1]As amended through St. 1998, c. 236, § 10.

[2]As appearing in St. 2008, c. 80, § 5.

[3]During the course of Dow's employment, the company went through three organizational iterations. It began as Starbak Communications, Inc.; later

organized under the laws of Delaware, with a sole place of business in Massachusetts, brought suit against Starbak's chief executive officer, Gregory Casale,[4] a Massachusetts resident, seeking unpaid sales commissions of more than $100,000, certain unreimbursed expenses, wages in lieu of accrued vacation time, treble damages, and attorney's fees.[5] In defending Dow's claim, Casale contended that it would be an impermissible "extraterritorial" application of the statute to permit Dow to avail himself of the private right of action provided in § 150, because Dow did not reside in Massachusetts and did not perform his work "primarily" in Massachusetts.

On stipulated facts, a judge of the Superior Court concluded that Dow had more than sufficient "contacts" with Massachusetts to afford him the protection of the Wage Act. Accordingly, he ruled in favor of Dow on the parties' cross motions for summary judgment, and entered separate and final judgment for Dow.[6] See Mass. R. Civ. P. 54(b), 365 Mass. 820 (1974). Casale appeals, again arguing that, as matter of law, the remedy provided by § 150 does not extend to Dow.[7] After de novo review, see *Crocker* v. *Townsend Oil Co.*, 464 Mass. 1, 5 (2012), we affirm.

*Facts.* We summarize the stipulated facts that bear on the issue presented. At all relevant times, Starbak was a Massachusetts-based developer and manufacturer of video conferencing software and hardware. Dow began working for Starbak on January 3, 2006, and, throughout his tenure with the company, was its only

---

became Gulfstream Media Corporation doing business as Starbak; and finally became Starbak, Inc. We refer to all of these entities as "Starbak" unless otherwise noted.

[4]Dow also sued two other company executives, who are not parties to this appeal.

[5]Pursuant to § 150, Dow first filed a complaint with the Attorney General, and received authorization to prosecute his claim.

[6]Cross claims and third-party claims remain to be decided.

[7]Casale does not dispute that he is an "employer" for purposes of the Wage Act. See G. L. c. 149, § 148 ("The president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section"). Nor does he contest the amounts awarded to Dow in the separate and final judgment. As required by § 150, the judge trebled the amount owed to Dow. The resulting judgment was in the amount of $337,168.23, with interest as allowed by law, and $25,000 in attorney's fees and costs.

salesperson. From March 15, 2007, until February 5, 2010, Dow held the title "director of sales." His written employment agreement with Starbak provided that it "shall be governed by and interpreted under the laws of the Commonwealth of Massachusetts."

While working for Starbak, Dow resided in Florida; however, he served Starbak customers in at least thirty States. His job caused him to travel to at least nineteen of those States, including Massachusetts, where he served between eleven and nineteen customers. Dow traveled to Massachusetts about twelve times in 2008, and eight or ten times in 2009. Unless he was required to visit a customer site, Dow could and did work from home in Florida, contacting the customers by either telephone or electronic mail (e-mail). Starbak paid for Internet service at Dow's home and expressly approved his telecommuting status.

At all relevant times, Starbak had a single office — initially located in Newton, and later located in Burlington. Dow did not have dedicated office space at either location, but he used the same cubicle each time he was present. The business cards issued to Dow by Starbak showed his contact information as Starbak's Massachusetts address, telephone number, and facsimile transmission number. All paperwork related to Dow's sales was generated in Massachusetts; all purchase orders from his customers were sent to Massachusetts; all invoices were sent from Massachusetts; and all payments were sent to Starbak in Massachusetts.

Dow reported to Starbak by contacting Casale in Massachusetts. The two spoke several times per week and communicated by e-mail almost daily with regard to new products, product changes, sales promotions and trade shows, customer sales forecasts and complaints, and other subjects related to the sale of Starbak's products.

Dow's paychecks were issued by Starbak in Massachusetts. His compensation consisted of an annual base salary plus commissions on sales, pursuant to a written commission plan. Commissions were calculated quarterly, and the amount due was payable on the second pay period following the end of each quarter. From October 31, 2008, onward, Starbak routinely

failed to pay Dow commissions that were due and payable to him.

On January 29, 2010, an involuntary bankruptcy petition was filed against Starbak. Less than one month later, Starbak ceased business operations and terminated all employees, including Dow. Dow received his final base pay through February 5, 2010, but did not receive reimbursement of certain expenses, compensation for fifteen days of accrued but unused vacation time, and upwards of $100,000 in unpaid commissions.

*Discussion.* "The purpose of the Wage Act is 'to prevent the unreasonable detention of wages.' " *Melia* v. *Zenhire, Inc.*, 462 Mass. 164, 170 (2012), quoting from *Boston Police Patrolmen's Assn.* v. *Boston*, 435 Mass. 718, 720 (2002). Section 148 of the Wage Act provides, in pertinent part: "Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him . . . and any employee discharged from such employment shall be paid in full on the day of his discharge . . . ." Such "wages" include, among other things, holiday or vacation pay due under an oral or written agreement, and commissions that are "definitely determined" and "due and payable" to the employee. G. L. c. 149, § 148.

Section 150 of the Wage Act establishes both public and private mechanisms for enforcement. "The [A]ttorney [G]eneral may make complaint or seek indictment against any person for a violation of § 148." In addition, "[a]n employee claiming to be aggrieved by a violation of . . . § 148 . . . may, 90 days after the filing of a complaint with the [A]ttorney [G]eneral, or sooner if the [A]ttorney [G]eneral assents in writing, and within 3 years after the violation, institute and prosecute . . . a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits." If the employee is successful, the employee is entitled to a mandatory award of treble damages, as well as attorney's fees and costs. G. L. c. 149, § 150.

Although Casale acknowledges in his brief that the Attorney General "presumably" would have the power to enforce the Wage Act directly against a noncompliant Massachusetts employer, he argues that the private right of action under § 150 should not be extended to a nonresident employee who did not

"primarily" perform the duties of his employment within the borders of the Commonwealth. According to Casale, Dow's limited physical presence in Massachusetts (twelve visits in 2008, and eight or ten visits in 2009) falls short of what is necessary to afford him private relief under the Wage Act.

In support of his position, Casale points to a Superior Court decision, Hadfield *vs.* A.W. Chesterton Co., Middlesex Superior Court No. 20084382 (Sept. 15, 2009), which concerned the applicability of the Wage Act to a citizen of Australia who was employed by a Massachusetts-based employer to work as a sales manager in sub-Saharan Africa.[8] During twelve years in this position, the employee was required to travel to the employer's Massachusetts office on numerous occasions and, towards the end of his tenure, was in frequent communication with the company's director of human resources, who was based in Massachusetts. When, after the employee's resignation, the employer refused to pay him for unused vacation time, the employee brought suit in Massachusetts for violation of the Wage Act. The judge — after noting a lack of Massachusetts precedent on the issue — dismissed the claim, reasoning that the determinative factor for application of the Wage Act was where the employee worked, and, because the plaintiff's work predominantly took place not only outside Massachusetts, but also outside the United States, the protections of the Wage Act did not extend to him.

Hadfield is readily distinguishable because of its international context.[9] See *Taylor* v. *Eastern Connection Operating, Inc.*, 465 Mass. 191, 198 n.9 (2013). Regardless, insofar as the Hadfield case suggests that the physical place where work is performed trumps all other considerations, we disagree with its analysis.

---

[8]Although the Hadfield case lacks precedential authority, in the absence of appellate cases on the subject, it has been cited in Federal District Court cases involving claims under Massachusetts wage laws. See, e.g., *Telford* v. *Iron World Mfg., LLC*, 680 F. Supp. 2d 337, 342 (D. Mass. 2010); *Gonyou* v. *Tri-Wire Engr. Solutions, Inc.*, 717 F. Supp. 2d 152, 155 (D. Mass. 2010).

[9]Without reference to any Massachusetts cases, the judge in Hadfield relied upon a "presumption" against the extraterritorial application of statutes, which derives from Federal concern about conflicts between our laws and those of other nations; however, no such concern arises in the interstate context. *Taylor* v. *Eastern Connection Operating, Inc.*, 465 Mass. 191, 198 & n.9 (2013).

Nor do we accept the plaintiff's equally absolute position that an employer's presence in Massachusetts is all that is necessary for an employee — wherever situated and whatever the circumstances of employment — to bring a private action against the employer under the Wage Act. To be sure, the language of the statute is directed at the regulation of employers and does not, in terms, restrict its remedies to employees who live or work in Massachusetts.[10] See *O'Connell* v. *Chasdi*, 400 Mass. 686, 689 n.3 (1987) (noting that the Massachusetts Civil Rights Act does not contain a provision limiting its reach to objectionable behavior within the Commonwealth). However, we think a more refined analysis is necessary.

The trial court judge, analogizing to the law of personal jurisdiction, concluded that Dow's contacts with Massachusetts were sufficient to afford him a remedy under § 150. We agree with the judge's assessment, although the analysis is better framed in terms of choice-of-law doctrine. See *Taylor* v. *Eastern Connection Operating, Inc.*, *supra* at 198, citing Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N.Y.U. L. Rev. 267, 306 (1966). See also *O'Connell* v. *Chasdi*, 400 Mass. at 689 n.3 (citing choice-of-law precedent, *Saharceski* v. *Marcure*, 373 Mass. 304, 310-312 [1977], in support of the observation that the Massachusetts Civil Rights Act may provide the plaintiff with a remedy for the defendant's out-of-State conduct).

In accordance with choice-of-law doctrine, so long as the requisite criteria are met, the application by a State of its local law is not an impermissible "extraterritorial" assertion of its authority. The overarching limiting principle, as set forth in the Restatement (Second) Conflict of Laws § 9 (1971), is that "[a] court may not apply the local law of its own [S]tate to determine a particular issue unless such application of this law would be

---

[10]In this respect, the Wage Act differs, for example, from the North Carolina Wage and Hour Act, which states that it is intended to "promote the general welfare of the people of the State." N.C. Gen. Stat. § 95-25.1(b) (2012). Based upon this language, the North Carolina statute has been construed to apply only for the benefit of North Carolina residents and those nonresidents whose primary workplace is in North Carolina. *Sawyer* v. *Market America, Inc.*, 190 N.C. App. 791, 795 (2008); *Panos* v. *Timco Engine Center, Inc.*, 197 N.C. App. 510, 512, 516-517 (2009).

reasonable in the light of the relationship of the [S]tate and of other [S]tates to the person, thing or occurrence involved."

Here, as compared to any other State,[11] Massachusetts has by far the most significant relationship not only to Starbak and Casale as citizens of the Commonwealth, but also to Dow's employment relationship with them. See *Cormier* v. *Pezrow New England, Inc.*, 437 Mass. 302, 307 (2002) (for venue purposes, under G. L. c. 151B, "an unlawful employment practice may occur where 'the core of the employment relationship' lies"). Throughout Dow's employment, Starbak was headquartered in Massachusetts, and all of its physical facilities were located in the Commonwealth. See *Taylor* v. *Eastern Connection Operating, Inc.*, 465 Mass. at 197. The customers Dow acquired entered into business with Starbak in Massachusetts; Dow's business cards identified Starbak's Massachusetts contact information as his own; Dow's paychecks were issued from Massachusetts; Dow came to Massachusetts on business multiple times each year, often working from Starbak's office, using the same cubicle each time he was there; Dow communicated with Casale in Massachusetts via e-mail almost daily and spoke with him numerous times each week by telephone; and Dow's employment agreement provided that it "shall be governed by and interpreted under the law of the Commonwealth of Massachusetts."[12]

Indeed, given the particular nature of Dow's work, his employ-

---

[11]The only other potentially interested jurisdiction is Florida, where, as Dow's place of residence, the effects of his failure to receive wages likely would be felt. However, it is not contended by either party that, as an alternative to the Wage Act, Florida law could be applied to this case. Florida law does not grant substantive rights like those guaranteed by the Wage Act, and Dow's only claim is one specifically asserted under the Wage Act. It is Casale's position that, if the Wage Act does not apply, Dow's action must be dismissed.

[12]At a minimum, the choice-of-law provision in Dow's employment agreement is some additional indication that Massachusetts is at the "core of the employment relationship." *Cormier* v. *Pezrow New England, Inc., supra.* Although Dow would have us go farther and conclude that the contractual choice-of-law clause in his employment agreement mandates that § 150 of the Wage Act applies to him, we question whether the clause, as phrased, extends to an extracontractual claim under the Wage Act. Cf. *Melia* v. *Zenhire, Inc.*, 462 Mass. at 169 (discussing New York law on the construction of choice-of-law clauses). Compare *Taylor* v. *Eastern Connection Operating, Inc., supra* at 195 n.7 (plaintiffs' misclassification claim, under G. L. c. 149, § 148B [*a*],

ment with Starbak had no substantial relationship to any place but Massachusetts. Dow essentially was a mobile employee, untethered to any particular workplace. His duties as a salesperson required him to travel throughout the United States on Starbak's behalf irrespective of where he lived; and he was allowed and expected to perform his duties whether he was in residence at Starbak's office, traveling on business, or working from home. In that sense, his work sensibly may be viewed as having "occurred" in Massachusetts where it benefited Starbak, no matter where he physically was located from day to day.

In short, in the circumstances presented, where the Commonwealth has such a close connection to the parties and their employment relationship, it is entirely reasonable to apply local law to Dow's claim and to afford him the remedy provided by § 150. The judgment for Dow is therefore affirmed.[13]

*So ordered.*

---

was within the scope of a choice-of-law clause providing that " '[t]his Contract and all rights and obligations of the parties' be construed in accordance with Massachusetts law . . . as the question of classification [bore] directly on the proper construction of the contract — i.e. whether it constitute[d] an employment or an independent contractor agreement").

[13]Section 150 entitles a prevailing employee to an award of reasonable attorney's fees and costs. Dow shall have fourteen days from the date of the rescript to submit to this court an application for appellate attorney's fees and costs, together with supporting documentation. See *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004). Casale shall have fourteen days thereafter to respond.