# United States Court of Appeals
## For the First Circuit

No. 21-1081

LEONARD VISCITO,

Plaintiff, Appellant,

v.

NATIONAL PLANNING CORPORATION, JOHN JOHNSON, MAURA COLLINS,

Defendants, Appellees,

JOHN DOE, JANE DOE,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Bart W. Heemskerk, with whom Heemskerk Business Litigation PLLC was on brief, for appellant.

Sean P. Lynch, with whom Mary Grace Patterson and Morgan, Lewis & Bockius LLP were on brief, for appellees.

May 13, 2022

THOMPSON, **Circuit Judge**.  Leonard Viscito, a Florida-based financial planner with a long-standing Massachusetts-based financial services company and office, appeals from the entry of final judgment entered in favor of his former broker-dealer on Viscito's wage and employment misclassification claims after the district court ruled on the parties' cross-motions for summary judgment.  In our de novo review, we are tasked with deciding whether Massachusetts' choice-of-law principles lead to the conclusion that the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148 ("MWA"), applies to the relationship between Viscito and his former broker-dealer.  For the reasons set forth below, we agree with the district court that the MWA does not apply to the undisputed facts in this case and affirm.

## BACKGROUND

Viscito is a licensed financial advisor who has been doing business as Viscito Financial Services ("VFS") since 1997.  He is registered with the Financial Institution Regulatory Authority ("FINRA") and the Securities and Exchange Commission ("SEC") in several states, including Massachusetts and Florida, and has long maintained an office with staff in Springfield, Massachusetts.  In 2008, Viscito bought a home in a part of Florida called The Villages.  He regularly worked out of his Florida home -- meeting with clients in person or virtually, responding to clients' questions by phone or email, placing securities' trade

orders, and providing financial services. His staff remained in Massachusetts, working in the Springfield office, and Viscito sometimes met with clients in person in this office as well. To work within the financial advice and securities industry, Viscito had to be affiliated with a registered "Broker-Dealer" which is "a brokerage firm that is subject[] to the supervision of [FINRA]." Throughout his career, Viscito has been affiliated with several such businesses, including one of the defendants in this case, National Planning Corporation ("NPC").

NPC is both an investment advising firm and a broker-dealer, headquartered in California. A broker-dealer "oversee[s] the sale of securities[ and] commission-based products" whereas an investment advisor charges fees for its advisory services. Each side of the business has a different regulatory structure and agency tasked with ensuring compliance with the industry's rules; NPC was a "dual-registrant" -- meaning it was registered with both the SEC and FINRA.

In November 2013, Viscito (in his personal capacity) signed an Independent Contractor's Agreement with NPC and thereafter sold securities and investment products exclusively as an NPC investment advisor representative ("IAR").[1] Viscito

---

[1] This agreement was the only contract Viscito entered into with NPC. According to NPC, all of its IARs providing services to NPC's clients were independent contractors; none were classified as employees.

registered both his Massachusetts VFS office and his Florida home as NPC branch offices, with the Florida office tagged by NPC (according to Viscito) as an "office of convenience."[2] In December 2014 Viscito personally became a Florida resident, meaning, in addition to living at The Villages and working extensively from his home, he obtained a Florida driver's license, registered to vote in Florida, and registered with Florida as a dual resident for securities licensing purposes.[3] Thereafter, NPC's Tax Forms 1099-MISC for 2015, 2016, and 2017 reflected Viscito's Florida address. Even so, Viscito continued to employ his staff in Massachusetts as employees of VFS and had sole authority to determine their rate of compensation and the situs of their office work. In his business dealings, Viscito used VFS letterhead with VFS contact details prominently displayed at the top and a message at the bottom in small font that VFS services were offered through NPC but that VFS and NPC were "separate and unrelated companies."

---

[2] Viscito's Florida "office of convenience" meant that he could "meet with clients on a kind of ad hoc, as-needed basis, but no books or records [we]re kept there."

[3] Viscito initiated these actions after Florida's Office of Financial Regulation received his application to register in Florida as an investment advisor associated with a firm, and its interest in Viscito's professional activities was piqued. The Office of Financial Regulation found that Viscito had been conducting investment advisory services and activities in Florida from January 2009 through November 15, 2013, without being properly registered in the State, which violated a Florida regulation governing this profession. Viscito stipulated to the findings and agreed to pay a $7,500 fine.

At the time Viscito signed his contract with NPC, his existing clients could join NPC as their new broker and continue to be "serviced" by Viscito. That is, his book of business could and did move with him. The bulk of Viscito's client relationships began with individuals in Massachusetts, and he continued to meet "at various times" (whatever that means) with some of them in person in his Massachusetts office. Using travel records and credit card statements, NPC asserts (and Viscito does not meaningfully refute[4]) that, while Viscito was affiliated with NPC, he spent more time in Florida than in Massachusetts or any other location.

During Viscito's affiliation with NPC, Viscito met with his clients without any NPC representatives also participating in the meetings and he did not report to NPC the number of client meetings he held or how he advised his clients. NPC did not direct or interfere with Viscito's management of his clients' accounts or the advice Viscito provided to his clients, but, on occasion, NPC directed Viscito via email to sell a particular mutual fund in a client's account.[5] Once a year, NPC conducted an in-person audit

---

[4] Viscito asserts that he was "regularly in Massachusetts for large parts of the year" but does not provide any precise detail or support other than this averment in his affidavit.

[5] The record does not reveal how often or under what circumstances NPC would send these directives.

of Viscito's Massachusetts NPC branch office and sent him a punch list of the ways in which the branch office was out of compliance with NPC policies. NPC conducted at least one in-person audit of Viscito's Florida branch office, in 2015. Based on Viscito's client transactions, NPC paid Viscito commissions and "investment advisory fees" that were "tied to the production generated by the accounts that [he] managed," but not a regular salary. Viscito received no vacation or holiday pay from NPC.

Viscito's affiliation with NPC came to an end in the fall of 2017 when Viscito got an email from NPC's CEO telling him that his registration with NPC would terminate that November and spelling out the actions Viscito needed to take in order to complete their separation.[6] This included finding a new firm with which to register and affiliate.[7]

---

[6] The summary judgment record does not clearly explain the reasons for the separation, but the record does show that NPC withdrew from FINRA and stopped doing business as a broker-dealer and investment advising firm as well as that NPC "entered into an asset purchase agreement with LPL" Financial (another broker-dealer) in November 2017.

[7] Later, during NPC's general counsel's deposition, in discussing who got which clients following separation, he explained that NPC's IARs "own[] the[ir] book of business, . . . they are free to go with the book, . . . there's no noncompete" contractual provision. And elaborating further on post-termination operations, Viscito's office manager testified at her deposition that VFS operations remained the same after the broker-dealer affiliation with NPC ended.

- 6 -

Nine months later in August 2018, Viscito sued NPC in a Massachusetts federal district court, alleging NPC had misclassified him as an independent contractor when he should have been on its books as an employee in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), the Massachusetts Independent Contractor Law, Mass. Gen. Laws ch. 149, § 148B, and the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148.[8] The misclassification, alleged Viscito, deprived him of wages and benefits to which he was entitled. Viscito alleged NPC's failure to properly classify and compensate him for his work resulted in its unjust enrichment and constituted a breach of the implied covenant of good faith and fair dealing. He also included a count for quantum meruit. Viscito sought "[a]ll damages to which [he] is entitled under Massachusetts and federal law," including doubling of the damages pursuant to federal law, 29 U.S.C. § 216(b), and treble damages pursuant to state law, Mass. Gen. Laws ch. 149, § 150. In July 2019, Viscito filed an amended complaint, adding NPC's CEO and CFO as individual defendants but not amending the allegations or claims.

In July 2020, Viscito and the defendants filed cross-motions for summary judgment, with Viscito seeking judgment as a

---

[8] Viscito sought and received a right to sue letter from the Office of the Attorney General, as required by Mass. Gen. Laws ch. 149, § 150.

matter of law in his favor on his two Massachusetts statutory wage claims and the defendants moving for summary judgment on all of Viscito's claims.[9] The district court concluded the defendants were entitled to judgment as a matter of law on Viscito's Massachusetts statutory wage claims because the "application of Massachusetts['] choice-of-law principles leads . . . [to the conclusion] that the MWA is inapplicable" to the relationship between Viscito and NPC. In addition, the district court concluded Viscito's other claims weren't going anywhere (the FLSA claim because "misclassification" is not an act prohibited by this federal law, the breach of the implied covenant of good faith and fair dealing claim because Viscito hadn't alleged a breach of contract or bad faith conduct on NPC's part, and the unjust enrichment and quantum meruit claims because the parties' relationship was indisputably governed by a contract -- the Independent Contractor's Agreement -- which knocked out these alternative theories of recovery).

Given this reasoning, the district court denied Viscito's motion, granted the defendants' motion in its entirety, and entered final judgment in the defendants' favor. Viscito

---

[9] Viscito had filed a motion for partial summary judgment on these same two counts almost a year earlier, but the district court denied it without prejudice on the basis that there were outstanding discovery disputes between the parties and that fact discovery was not yet completed.

timely appealed, challenging the judgment as to the state statutory counts only and arguing that the district court erred by concluding the MWA doesn't apply to his employment relationship with NPC.

## STANDARD OF REVIEW

Choice-of-law determinations are questions of law, see Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004); Crellin Techs., Inc. v. Equipmentlease Corp., 18 F.3d 1, 4 (1st Cir. 1994), as such they are reviewed anew, Waithaka v. Amazon.com, Inc., 966 F.3d 10, 16 (1st Cir. 2020), (citing Robidoux v. Muholland, 642 F.3d 20, 22 (1st Cir. 2011)), cert. denied, 141 S. Ct. 2794 (2021). "We [also] review the entry of summary judgment de novo." Garcia-Garcia v. Costco Wholesale Corp., 878 F.3d 411, 417 (1st Cir. 2017) (quoting Echevarría v. AstraZeneca Pharm. LP, 856 F.3d 119, 126 (1st Cir. 2017)). "A grant of summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. (quoting Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 68 (1st Cir. 2015)). "A genuine issue of fact exists where the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (quoting Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009)). "The court must examine 'the record in the light most favorable to the nonmovant' and must make 'all reasonable inferences in that party's favor.'" Id. (quoting Ameen, 777 F.3d at 68). "Where, as here, the parties

cross-move for summary judgment, the court must [examine] each motion 'separately, drawing inferences against each movant in turn.'" Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 20–21 (1st Cir. 2018) (quoting EEOC v. Steamship Clerks Union, Loc. 1066, 48 F.3d 594, 603 n.8 (1st Cir. 1995)). "While we resolve all reasonable inferences in favor of the nonmoving party, we must ignore conclusory allegations, improbable inferences, and unsupported speculation." Garcia-Garcia, 878 F.3d at 417 (quoting Taylor, 576 F.3d at 24).

**DISCUSSION**

The issue in this appeal is, as the parties agree, a narrow one: whether Viscito can properly invoke Massachusetts statutory law to govern his employment claims against NPC. The answer turns on the application of Massachusetts' choice-of-law principles, which we set forth in the context of MWA claims before turning our attention to Viscito's arguments about why he thinks the district court got it wrong.

"A federal district court exercising its diversity jurisdiction must apply the choice-of-law rules of the state in which it sits." Hendricks & Assocs., Inc. v. Daewoo Corp., 923 F.2d 209, 213 n.3 (1st Cir. 1991) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941) and Bi-Rite Enters. v. Bruce Miner Co., 757 F.2d 440, 442 (1st Cir. 1985)). "Massachusetts follows 'a functional choice-of-law approach that responds to the

interests of the parties, the States involved, and the interstate system as a whole.'" UBS Fin. Servs., Inc. v. Aliberti, 133 N.E.3d 277, 288 n.12 (Mass. 2019) (quoting Bushkin Assocs., Inc. v. Raytheon Co., 473 N.E.2d 662, 668-70 (Mass. 1985)); see also Hisert v. Haschen, 980 F.3d 6, 8 (1st Cir. 2020) (acknowledging functional approach). "Under the functional approach, the forum applies the substantive law of the state which has the more significant relationship to the transaction in litigation." Hendricks, 923 F.2d at 213 n.3. This approach in Massachusetts "is explicitly guided by the Restatement (Second) of Conflict of Laws (1971) [("Restatement")]," Aliberti, 133 N.E.3d at 288 n.12 (quoting Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co., 803 N.E.2d 750, 752 (Mass. App. Ct. 2004)) (alteration in original), which provides that "[a] court may not apply the local law of its own state to determine a particular issue unless such application of this law would be reasonable in the light of the relationship of the state and of other states to the person, thing or occurrence involved," Restatement § 9 cmt. g.

In their arguments to the district court, both parties relied heavily on a Massachusetts Appeals Court case holding that a salesman telecommuting much of the time from his residence in Florida while working for a Massachusetts company could avail himself of the MWA because Massachusetts had "by far the most significant relationship" to the defendant-employer as a citizen

- 11 -

of Massachusetts and to the plaintiff-salesman's employment relationship with the defendant. <u>Dow</u> v. <u>Casale</u>, 989 N.E.2d 909, 914 (Mass. App. Ct. 2013).[10] The Massachusetts Appeals Court highlighted several characteristics of the parties and the employment relationship, including:  the defendant-employer was headquartered in Massachusetts; all of the defendant-employer's physical facilities were in the Commonwealth; the plaintiff-salesman traveled throughout the country -- essentially "untethered to any particular work place" -- but performed the same work tasks whether he was home in Florida, traveling around the country, or in the defendant-employer's Massachusetts office; all of the plaintiff-salesman's work -- regardless of the geographic location of the performance -- benefited the defendant-employer at its base in Massachusetts; the plaintiff-salesman's business cards provided the defendant-employer's contact information as his contact information; his paychecks were issued in Massachusetts; he worked from the Massachusetts facility

---

[10] We note that "[w]hile decisions of a state's intermediate appellate court are not binding on a federal court sitting in diversity, such opinions are entitled to some weight." <u>Vt. Mut. Ins. Co.</u> v. <u>Zamsky</u>, 732 F.3d 37, 42 (1st Cir. 2013). Moreover, "[w]e have consistently followed the decisions of state intermediate appellate courts in the absence of convincing evidence that the state's highest court would decide otherwise." <u>Torres-Ronda</u> v. <u>Nationwide Mut. Ins. Co.</u>, 18 F.4th 80, 84 (1st Cir. 2021).

several times a year; and his employment agreement stated it was "governed by and interpreted under" Massachusetts law.  Id.

In rendering its decision, the district court contrasted these details with the characteristics of Viscito's and NPC's working relationship, highlighting that NPC had a more significant relationship with California than Massachusetts because it is headquartered in California, had no employees in Massachusetts, and registered in Massachusetts as a broker-dealer for regulatory purposes only.  In addition, other than the annual in-person audit of Viscito's Massachusetts branch office, NPC provided all of its services to Viscito at his Florida address (e.g., tax forms, commission statements, online trainings) and all of the income Viscito generated for NPC benefited NPC at its home base in California.  Moreover, the Independent Contractors Agreement provided that it would be subject to California law.[11]  The district court also pointed out that Viscito spent more than half of his time working from Florida and that his tie to Massachusetts was his business interest in VFS but that neither VFS nor its employees

---

[11]  The Independent Contractors Agreement governing the relationship between Viscito and NPC indeed included a forum selection clause stating that the contract "shall be subject to California law, without giving effect to its choice of law provisions."  As the district court noted, however, the Massachusetts Supreme Judicial Court says that a contract's choice-of-law clause does not govern a Wage Act claim when (as here) the choice-of-law clause doesn't explicitly refer to and include statutory causes of action.  Melia v. Zenhire, Inc., 967 N.E.2d 580, 590 (Mass. 2012).

had a direct relationship with NPC. Ultimately, the district court concluded that "Massachusetts had a tenuous connection to the relationship between NPC and [Viscito, and] California and Florida had more significant ties"; the application of Massachusetts' choice-of-law principles meant the MWA is inapplicable.

Viscito offers a few ideas to us about why the district court erred in concluding the MWA is inapplicable to his employment relationship with NPC.[12] The gist of his main argument targets why he thinks the district court's actual application of the most significant relationship standard went awry. According to Viscito, the district court "misstated and downplayed facts" demonstrating Massachusetts is the state that has the most significant relationship to NPC and Viscito as well as to their employment relationship. Continuing, Viscito says the court

---

[12] We quickly dispense with his first line of attack, which we understand to be that the district court erred by applying the most significant relationship standard at all when, according to Viscito, the court should have only considered whether it was "reasonable" to conclude the MWA applied because neither NPC nor the court "identified any other state [wage] law . . . in conflict with the law of . . . Massachusetts." However, as NPC points out, we don't have to take up this argument because it's waived -- Viscito argued for the application of Dow's most significant relationship standard to the district court and raises this argument for the first time on appeal. See Hisert, 980 F.3d at 8. We also note that Viscito argued for the application of the most significant relationship standard when he filed his first motion for partial summary judgment -- the one the district court denied without prejudice due to outstanding discovery issues. In this first motion, he did not utter a peep about the choice of law coming down to "reasonableness" only, as he now argues on appeal.

focused too narrowly on Viscito's physical location during the time he worked for NPC, ignoring that he was still a citizen of Massachusetts in 2013 when he signed the Independent Contractors Agreement in the first place.  Further, he says the court omitted a discussion of the fact that most of the revenue Viscito generated for NPC was from accounts opened and maintained in Massachusetts for Massachusetts residents with account transactions documented in Massachusetts.  Therefore, the district court erred in relying on Viscito's interest in VFS as the only significant relationship point for Viscito to Massachusetts.

For its part, NPC says the district court got it right when it applied the Massachusetts functional choice-of-law standard to the undisputed material facts and, in consequence, concluded Massachusetts does not have the most significant relationship to Viscito's employment affiliation with NPC.  NPC contends Viscito has not shown why the details he wants emphasized should be viewed as dispositive in his favor and that each of the employment characteristics considered in Dow (the state where the employer's headquarters is located, the place(s) the worker performed the work, the frequency of interactions between the worker and the employer in Massachusetts, whether another state has a significant connection to the worker and work performance, and whether the contract between the worker and employer has a

- 15 -

choice-of-law provision, see 989 N.E.2d at 914) weigh against the application of Massachusetts law here.

We believe NPC has the better argument. The undisputed summary judgment record as we have reviewed it afresh indicates the district court was not wrong to conclude Viscito had spent more than half of his time in Florida while he was affiliated with NPC.[13] Viscito clearly managed his relationships with his clients more often from Florida than in person in Massachusetts. Moreover, when Viscito was in Massachusetts, all of his contacts were with his own company and his clients, and not (other than the single

---

[13] In his opening brief, Viscito seems to be asserting that a factual dispute exists about how much time he spent in Florida. But in doing so, he leaves us emptyhanded as to what he believes to be the legal significance of such a contention here. Viscito does not attempt to argue that this dispute created a genuine issue of fact that should have precluded summary judgment. Perhaps this is so because the record belies such an assertion. NPC, using Viscito's travel and business records, provided in its summary judgment documents a detailed breakdown of when Viscito was physically present in Massachusetts and Florida. Viscito did not respond or attempt to controvert this evidence, and so NPC's statement of undisputed facts about Viscito's time spent in Massachusetts as opposed to Florida is deemed admitted. See Frappier v. Countrywide Home Loans, Inc., 645 F.3d 51, 56 (1st Cir. 2011). He also did not provide any materials of his own to support his general affidavit averment that he was "regularly in Massachusetts for large parts of the year." This general statement does not create a genuine dispute about the amount of time Viscito spent in Massachusetts because NPC's evidence is not in fact inconsistent with this statement. As this court has said before, "[t]he summary judgment stage is the put up or shut up moment in litigation." Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 316 (1st Cir. 2016) (quoting Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 226 (1st Cir. 2013)). Therefore, to the extent Viscito is arguing that the district court somehow erred in deeming the factual record undisputed, he is mistaken.

audit every year) with any representative of NPC. And, contrary to Viscito's contention that the district court leaned too heavily on his physical location in its analysis to determine whether Massachusetts had the most significant relationship to the affiliation between NPC and Viscito, the court appropriately considered the fact that Viscito was located outside of Massachusetts as only one of several factors in the mix -- a mix that also included consideration of the location of NPC's headquarters and physical facilities, the location of its employees, the frequency with which NPC had contact with Viscito in Massachusetts compared to Florida, the state in which NPC benefited from Viscito's work as an IAR, and Viscito's business interests in Massachusetts. See Dow, 989 N.E.2d at 914-15. While in Dow the Appeals Court deemed the plaintiff's mobile work around the country to have "occurred" in Massachusetts because the plaintiff's work always benefited the Massachusetts-based defendant and did not benefit any other state given the dynamics of the working relationship, here Viscito's work, performed more often from Florida than Massachusetts -- albeit for some customers who may have been Massachusetts residents -- benefited the California-based NPC in California because NPC did not have any facilities or employees in Massachusetts.

But not so fast, says Viscito. Had the district court properly applied the most significant relationship standard to the

facts here, it would have weighed them differently and concluded Massachusetts has the most significant relationship to the employment connection between Viscito and NPC. What Viscito focused on below (and does again here) was on details of his work with NPC such as keeping his clients' physical files at the Massachusetts branch office, displaying the Massachusetts VFS address on all of his NPC-approved marketing materials, initially providing services to many of his clients in Massachusetts, and maintaining the greatest share of his assets under management with Massachusetts resident account holders. The district court, says Viscito, was also wrong because it did not give any weight to Massachusetts as the place where Viscito generated fees and commissions for NPC as part of the "core of the employment relationship" factor. Dow, 989 N.E.2d at 914 & n.12 (quoting Cormier v. Pezrow New England, Inc., 771 N.E.2d 158, 163 (Mass. 2002)). But again, he is incorrect. That the district court did not explicitly identify the fees and commissions generated from the clients and documented in files located in Massachusetts as deserving more weight than the other undisputed details of the working relationship was not error. The district court did find, for example, that "[r]egardless of where [Viscito] worked, the income he generated benefitted NPC in California," that NPC provided all of its services to Viscito from California, and that, other than the annual audit, NPC did not require Viscito to train

or work in Massachusetts. Clearly the district court considered the specific characteristics and the nature of the industry, the revenue and income Viscito generated, and the significance of these facts within the mix of factors for the choice-of-law analysis.

Therefore, for the reasons discussed herein, we conclude, like the district court, that Massachusetts is not the state with the most significant connection to the employment relationship between NPC and Viscito, and NPC is entitled to summary judgment on Viscito's Massachusetts statutory claims.[14]

---

[14] Viscito makes two other arguments in his appeal but both are waived. First, he says the district court should have concluded that Massachusetts has personal jurisdiction over NPC and that the exercise of jurisdiction over NPC based on its presence in Massachusetts is consistent with due process. As NPC points out, this argument is raised for the first time in this appeal and is therefore waived for Viscito's failure to raise it first to the district court. See Johnson v. Johnson, 23 F.4th 136, 143 (1st Cir. 2022). Even so, Dow is clear that the choice-of-law doctrine is a better frame of analysis than personal jurisdiction in this precise situation, see 989 N.E.2d at 913, and NPC has not advanced any jurisdictional challenges.

Second, Viscito asserts that "Massachusetts has a fundamental policy interest in enforcing the [MWA]" and neither NPC nor the district court identified another state with a public policy interest in NPC's relationship with Viscito. NPC says Viscito also waived this argument for failure to raise it below. Viscito replies that he did assert Massachusetts' strong policy interest in the enforcement of the MWA to the district court, and the record shows that this argument was indeed included in his motion for partial summary judgment. However, other than asserting Massachusetts' stated policy interest in enforcing the MWA, Viscito does not develop an argument here (and did not below) about how Massachusetts' stated policy interest can show that his employment relationship with NPC is so significantly related to Massachusetts that the district court was wrong to conclude Massachusetts law is inapplicable.

## WRAP UP

All that's left to say is the district court's judgment is **affirmed** and each party shall bear its own costs.